Vance M. THOMPSON. Jr.; William Hadley Thompson; W. Dane Clay; W. Dane Clay, Trustee; and R. Mike Butner, Appellants,

v.

ECOLOGICAL SCIENCE CORPORATION, Appellee.

No. 19699.

United States Court of Appeals, Eighth Circuit.

Feb. 4, 1970.

James Guy Tucker, Jr., of Rose. Meek, House, Barron, Nash & Williamson, Little Rock, Ark., for appellants.

Thomas A. Morris, of Johnson, Bromberg, Leeds & Riggs, Dallas, Tex., for appellee; Louis P. Bickel, Dallas, Tex., and Abner McGehee, of Cockrill, Laser, McGehee, Sharp & Boswell, Little Rock, Ark., on brief.

Before GIBSON, LAY and BRIGHT, Circuit Judges.

LAY, Circuit Judge.

Vance M. Thompson, Jr., a citizen of Tennessee, and William Hadley Thompson, W. Dane Clay, W. Dane Clay, Trustee, and R. Mike Butner, all citizens of Arkansas (hereinafter called the Thompson Group), brought suit in the Eastern District of Arkansas for an alleged breach of contract. The defendant is Ecological Science Corporation, successor to Southern Gulf Utilities, Inc. The defendant is a Florida corporation having its principal place of business in Florida. Diversity jurisdiction exists and the damages alleged are well over $10,000. Personal service on the defendant Ecological Science Corporation was made under Fed.R.Civ.P. 4(e) pursuant to the Arkansas Uniform Interstate and International Procedure Act, Ark.Stat. Ann. § 27-2501 et seq. (Supp.1967), by

serving the defendant corporation in Florida by registered mail. On October 28, 1968, defendant filed a motion to dismiss for want of jurisdiction of the person and an alternative motion to quash the purported service of process. The motion to dismiss for want of personal jurisdiction was granted and the complaint was dismissed without prejudice. 295 F.Supp. 1307 (E.D.Ark.1969). This appeal followed. We reverse.

The facts are not in substantial dispute. In October of 1967 the Vice President of Ecological, S. William Fuller, and its Controller, Mark Auerback, came to Little Rock, Arkansas for the purpose of cancelling one contract and negotiating another. The negotiations for the new contract with the Thompson Group related to the organization, financing and operation of a new corporation, Energy Dynamics, Inc., which was to sell a patented incinerator and related products and services.

After negotiations lasting for two days, a tentative agreement was reached. The Thompson Group was given the task of writing up the proposed agreement after which it was to be sent to the defendant's officers in Florida for approval. On October 17, 1967, a draft of the proposed terms of the agreement was sent to Vice President Fuller in Florida for approval. The covering letter set forth that the agreement would become effective upon execution by the plaintiffs, to be done not later than October 23, 1967. Minor modifications were agreed upon over the telephone and a final draft was prepared in Florida and sent to the plaintiffs in Arkansas. Notice of acceptance was given by the plaintiffs on October 23, 1967, after which the contract was returned to Florida where it was signed by the officials of Ecological. It is undisputed that defendant conducted no other business activities in the State of Arkansas.

According to the terms of the October 23, 1967, agreement, Ecological was to join with plaintiffs in the formation of Energy Dynamics, Inc. Ecological was to own 51% of the stock and plaintiffs 49%. Plaintiffs paid $18,000 in cash and gave a promissory note for $31,000. In addition, plaintiffs subscribed for 490 more shares at $100 per share. In their complaint they basically allege that the October 23 contract was breached and that they have not yet received any stock.

The relevant statute in Arkansas, § 27–2502, in part provides:

"C. Personal jurisdiction based upon conduct.

"1. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's

"(a) transacting any business in this State;

"(b) contracting to supply services or things in this State."

The Arkansas Supreme Court has given this statute a broad and liberal construction. See Pennsalt Chemical Corp. v. Crown Cork & Seal Co., Inc., 244 Ark. 638, 426 S.W.2d 417 (1968); Safeway Stores, Inc. v. Shwayder Bros., Inc., 238 Ark. 768, 384 S.W.2d 473 (1964). See also the excellent analysis of the overall problem involving use of the long arm statutes in Arkansas by Henry Woods in The Uniform Long-Arm Act in Arkansas: The Far Side of Jurisdiction, 22 Ark.L.Rev. 627 (1969).

The dismissal by the district court was made on the grounds that defendant had not established within the State of Arkansas minimum contacts so as to come within the established tests of due process. Judge Heaney has recently pointed up our prior decisions where we have summarized the well-established general guidelines laid down by the United States Supreme Court in this area. See Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365 (8 Cir. 1969). In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the older concepts of "presence" and "consent" were rejected for that of "certain minimum contacts with * * * (the state) * * *

such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158. In his opinion Justice Stone noted that the demands of due process are met "by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." *Id.* at 317, 66 S.Ct. at 158. This was illustrated in McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957), where the Court found one contact, having a substantial connection with the state, to be sufficient for purposes of due process. However, in a case following shortly thereafter, Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Court also noted that not all restrictions to the exercise of in personam jurisdiction over foreign corporations had been removed. The Supreme Court reiterated that a minimal burden to establish jurisdiction is that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 253, 78 S.Ct. at 1240.

■ In Aftanase v. Economy Baler Co., 343 F.2d 187 (8 Cir. 1965), we noted that there are under these decisions three primary factors which are to be considered: (1) the quantity of the contacts, (2) the nature and quality of the contacts and (3) the source and connection of the cause of action with those contacts. We also mentioned two secondary factors, the interest of the forum state and the convenience or inconvenience to the parties. Of course, these factors must be applied to each case in light of their own facts. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

■ In the instant case, although the number of separate contacts with the state were not many, the pervasive contact was the negotiations leading up to the execution of the actual contract. This conference lasted for a period of two days and was conducted in Little Rock, Arkansas.[1] In addition, there were also several minor contacts in Arkansas involving the subsequent telephone calls necessary to complete the agreement. The initial draft of the agreement was itself prepared in Arkansas and executed there by the Thompson Group. The fact that the actual final execution of the contract may have been in Florida, rather than in Arkansas, is immaterial. Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (6 Cir. 1968); United States v. Montreal Trust Co., 358 F.2d 239 (2 Cir. 1966); Harry Winston, Inc. v. Waldfogel, 292 F.Supp. 473 (S.D.N.Y.1968).

It is undisputed that during the negotiations the agents of Ecological were physically present in Arkansas. Cf. Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583 (2 Cir. 1965). We deem it significant that the defendant's officers purposefully and voluntarily entered the State of Arkansas to induce residents thereof to cancel one contract[2] and negotiate another. It is clear that Ecological availed itself of the privilege of con-

---

1. 2 Moore, Federal Practice ¶ 4.25[5], at 1173 (2d ed. 1967):
   "If there is a minimum of contacts, and the cause of action arises out of the contacts, it will normally be fair and reasonable to sustain jurisdiction."

2. By affidavit of S. William Fuller, an officer of defendant, defendant admits the purpose of the Arkansas trip was "* * * to secure the cancellation of * * * [an agreement dated December 1, 1966]

* * * because Southern Gulf was facing a deadline of October 23, 1967, to consider at a Board of Directors meeting called for that date, a transaction with third parties that required such cancellation, and that the offer of the opportunity to invest in the incinerator company was an inducement for the cancellation; that if the plaintiffs had elected not to participate in the incinerator project, Southern Gulf was free to proceed on all related matters."

ducting activities within the State of Arkansas and had thereby invoked the benefits of its laws while there, thus satisfying one of the prerequisites for jurisdiction. See Hanson v. Denckla, supra; Hutter Northern Trust v. Door County Chamber of Commerce, 403 F.2d 481, 486 (7 Cir. 1968); Liquid Carriers Corp. v. American Marine Corp., 375 F. 2d 951 (2 Cir. 1967); United States v. Montreal Trust Co., supra, 358 F.2d at 244; cf. Electro-Craft Corp. v. Maxwell Electronics Corp., supra, 417 F.2d at 368–369.

■ The defendant's activities in Arkansas were directed toward the consummation of the contract in question. An ordinarily insignificant contact with a state becomes constitutionally significant when it gives rise to the claim involved in the lawsuit. See McGee v. International Life Insurance Co., supra; Gkiafis v. Steamship Yiosonas, 342 F.2d 546, 556 (4 Cir. 1965); cf. Dragor Shipping Corp. v. Union Tank Car Co., 361 F.2d 43 (9 Cir. 1966). Additionally, the State of Arkansas has an interest in any contract involving its citizens, but it has a special interest in protecting the rights of its citizens under a contract negotiated and effectuated in Arkansas. As recognized in Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 385 (6 Cir. 1968), "when the contract is with a resident * * * the State's interest in resolving a suit based on the contract and brought by that resident cannot be doubted." See also Developments—Jurisdiction, 73 Harv.L. Rev. 909, 928 (1960).

As discussed above, the fact that the claim for relief relates directly to the activities which were transacted in Arkansas is relevant as an indicia of the quali-

tative contact made. However, it is also a prerequisite to the court's jurisdiction of the subject matter under Arkansas law. The Arkansas statute, § 27–2502, subd. C(2) requires that,

"When jurisdiction over a person is based solely upon this section, only a (cause of action) (claim for relief) arising from acts enumerated in this section may be asserted against him."

We must observe in this regard that plaintiffs' complaint is a long, rambling one, hardly in compliance with Fed.R. Civ.P. 8 requiring notice pleading. It is at best difficult to comprehend the full nature of plaintiffs' claim other than the allegation that "defendant has completely breached the terms of his agreement." We have no occasion to presently consider whether other allegations extend beyond the purview of the statute. We sustain service of process only on the basis that the complaint does contain some allegations within the statutory scope of Ark.Stat.Ann. § 27–2502, subd. C(2). The district court's pretrial will undoubtedly limit the issues to those within the jurisdiction of the court to try, as governed by § 27–2502, subd. C(2).[3]

Under the totality of circumstances, we hold that the requirements of due process have been satisfied even though the jurisdiction is based upon minimal activities by the defendant in the forum state. See Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951 (2 Cir.1967); National Gas Appliance Corp. v. AB Electrolux, 270 F.2d 472 (7 Cir.1959); Bluff Creek Oil Co. v. Green, 257 F.2d 83 (5 Cir.1958); 18 Fletcher, Cycl. Corporations § 8722 at 319 (1969).

Judgment reversed and remanded for further proceedings.[4]

3. This statute should be broadly construed so as to include all claims arising out of an entire transaction. Cf. 9 B Uniform Laws Ann. 1.03(b), Comment. However, breach of an agreement to incorporate and issue shares of stock is one thing, mismanagement of the newly formed corporation is another. See generally 1 Fletcher, Cycl. Corporations §§ 190–193 (1963).

4. Even if personal jurisdiction had not been obtainable in Arkansas, a transfer under 28 U.S.C. § 1406 might have been a preferable alternative to dismissal. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). Professor Foster, at 47 F.R.D. 73, 107, has cogently observed:

"In actions where a plaintiff seriously intends to press his claim, a District

Court dismissal of a party for lack of amenability should occur only under exceptional circumstances. The usual answer should be a venue transfer, rather than a dismissal. * * * A constitutional issue of amenability, in short, should arise only rarely in a District Court proceeding."

Cf. Mayo Clinic v. Kaiser, 383 F.2d 653 (8 Cir. 1967).