Jose VASQUEZ, Plaintiff,

v.

FALCON COACH CO., INC., a Kansas
corporation, Defendant.

Civ. No. A3–74–38.

United States District Court,
D. North Dakota,
Southeastern Division.

June 12, 1974.

Maurice G. McCormick, Vogel, Vogel, Brantner & Kelly, Fargo, N. D., for plaintiff.

Frank T. Knox, Lanier, Knox & Olson, Fargo, N. D., for defendant; Phillip C. Gans, Cogswell & Cox, Denver, Colo., of counsel.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

The above entitled action was removed from Cass County District Court, First Judicial District Court of North Dakota, to this Court on April 17, 1974. The complaint alleges that the defendant, Falcon Coach Company, Inc., (Falcon) negligently manufactured a mobile home purchased by plaintiff, said mobile home allegedly being defective and unsuitable as a mobile home. It is also alleged that the defendant breached implied and express warranties, and asserts strict liability as a basis for recovery. The plain-tiff prays for damages of $10,637.51, the purchase price of the mobile home.

The plaintiff, Jose Vasquez, is a citizen of North Dakota and is the purchaser of the mobile home. Defendant, Falcon, is a Kansas corporation, which manufactures mobile homes, including the home in question, with its principal place of business in Kansas.

Falcon, on May 7, moved this Court to quash an attempted service of process, or in the alternative to dismiss the action for failure to state a claim upon which relief can be granted, or in the alternative to change the venue of this action to Kansas.

## I. MOTION TO QUASH SERVICE OF PROCESS

*Contentions of the Parties*

Falcon's motion to quash service of process is based upon a claim that the court lacks jurisdiction over the defendant, the contention being that the contacts of the defendant with the State of North Dakota—namely, that it merely delivers its goods to North Dakota and does isolated repair work in the state—are insufficient under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and North Dakota law, to establish jurisdiction of this court over the defendant. Falcon points to its lack of contacts with North Dakota as follows:

"Falcon maintains no office in North Dakota; nor does it solicit business directly from citizens of North Dakota. Falcon has no appointed agent in North Dakota. It enters into no contracts, or finance transactions in North Dakota. Falcon does no installation work or construction work in North Dakota. Falcon neither purchases nor sells goods directly on consignment in North Dakota. Falcon maintains no stock or goods in North Dakota. Falcon owns no property in North Dakota."

In stating that it does not sell directly to North Dakota citizens, it appears that Falcon is referring to the ultimate user or consumer of its mobile homes. An

affidavit of a mobile home dealer in Fargo, Edward P. Powers of Powers Homes, states that sales were solicited from him in Fargo by Falcon sales representatives, whereupon he agreed to purchase several trailers and did, in fact, purchase several trailers. Powers states that Falcon Coach Company, Inc., delivered all of these trailers to Fargo.

Plaintiff, in contending that Falcon has sufficient contact with North Dakota to establish the jurisdiction of this court, relies under Rule 4(d)(7) F.R.Civ.P. upon Rule 4(b)(2)(B) of the North Dakota Rules of Civil Procedure which states:

"(b) *Jurisdiction of person*

(2) *Personal jurisdiction based upon contacts.* A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent, as to any claim for relief arising from the person's

(B) contracting to supply or supplying services, goods, or other things in this state. . ."

### Choice of Law

Defendant relies upon two North Dakota decisions—Fisher v. Mon Dak Truck Lines, Inc., 166 N.W.2d 371 (N.D.1969); and Scranton Grain Co. v. Lubbock Machine & Supply Company, 167 N.W.2d 748 (N.D.1969)—to support his contention that this court has no jurisdiction over a foreign corporation based upon the contacts, or lack of contacts, in this case. Defendant stresses that these decisions were decided on a constitutional basis and were not merely interpreting the reach of the state's long arm statute. As such, defendant urges that these state decisions are binding on this court as to whether the contacts herein stated are sufficient under the Due Process Clause for this Court to assert jurisdiction.

Defendant, in contending that the constitutional limits of jurisdiction over out-of-state corporations is governed by state law, is mistaken. The leading case of Arrowsmith v. United Press International, 320 F.2d 219 (2nd Cir. 1963), states the choice of law rule as follows: The question of whether an assertion of jurisdiction is offensive to due process requirements is a question of federal law, whereas the question of whether a corporation is amenable to service of process is a question of state law. A federal court will look to the state statutes and decisions to determine whether a state court could exercise jurisdiction based upon the contacts present once it is determined that the due process clause would allow an assertion of jurisdiction. In other words, a state may, but need not, subject a foreign corporation to *in personam* jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). The *Arrowsmith* rule has been universally adopted, 2 Moore's Federal Practice ¶ 4.25(7); 6 A.L.R.3d *Federal or state law as controlling, in diversity action, whether foreign corporation is amenable to service of process,* § 3, and is followed in the Eighth Circuit, Simpkins v. Council Manufacturing Corporation, 332 F.2d 733 (8th Cir. 1964); Jennings v. McCall Corporation, 320 F.2d 64 (8th Cir. 1963).

### Due Process Limitations

Service upon a foreign corporation as prescribed by Rule 4(d)(3) is not valid unless there exists an adequate basis for the assertion of *in personam* jurisdiction over the non-resident. 2 Moore's Federal Practice ¶ 4.25(1).

Since the Supreme Court's decision of Bank of Augusta v. Earle, 38 U.S. 519, 13 Peters 519, 10 L.Ed. 274 (1839), which served as the basis for limiting suits against a corporation to the state of its incorporation on the theory that the corporation could not exist or be present beyond the state of its legal creation, there has been a tremendous expansion to include situations where out-of-state service is valid.

"As technological progress has increased the flow of commerce between the States, the need for jurisdiction over nonresidents has undergone a

similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to the changes, the requirement for personal jurisdiction over nonresidents have evolved. . ." Hanson v. Denckla, 357 U.S. 235, 250, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958).

Thus, the Supreme Court expanded the basis of jurisdiction over foreign corporations on theories of express or implied "consent", Lafayette Insurance Co. v. French, 59 U.S. 404, 18 How. 404, 15 L.Ed. 451 (1855); and doing business of sufficient scope or quality to constitute "presence" in the forum state, Philadelphia & Reading Rwy. Co. v. McKibben, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710 (1917).

The Supreme Court set the guidelines for the modern concept of out-of-state service in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

"[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " at 316.

The demands of due process, the Supreme Court stated,

"may be met by such contacts of the corporation with the state of the forum as to make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection. . . ." at 317.

While it is true that *International Shoe* involved a continuous and systematic activity on the part of the subject corporation in maintaining several salesmen in the forum state, the court set broad guidelines not limited to the facts of the case.

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. . . ."

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." at 319 (citations omitted).

This Court believes that *International Shoe's* minimum contacts doctrine encompasses the relation between Falcon and North Dakota.

The Supreme Court has upheld the exercise of state jurisdiction over nonresident corporations on less significant contacts than those found in *International Shoe*. In Travelers Health Association v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950), the Virginia State Corporation Commission issued a cease and desist order preventing Travelers from selling or advertising, by mail or otherwise, insurance in Virginia in that Travelers failed to comply with the state's Blue Sky laws. This order was upheld by the Supreme Court although Travelers was a Nebraska corporation which issued health insurance to about 800 "members" in Virginia. New members were obtained only by recommendation of existing members, all business transactions were carried on in Nebraska, including the acceptance of applications, payment of assessments, and filing of claims, and Travelers had no office, agent, or property in Virginia. Fairness was looked at by the Supreme Court from

the viewpoint of forum's citizens in *Travelers*:

"Moreover, if Virginia was without power to require the Association to accept service of process on the Secretary of the Commonwealth, the only forum for injured certificate holders might be Nebraska. Health benefit claims are seldom so large that Virginia policyholders could afford the expense and trouble of a Nebraska law suit. In addition, suits on alleged losses can be more conveniently tried in Virginia where witnesses would most likely live and where claims for losses would presumedly be investigated. Such factors have been given great weight in applying the doctrine of *forum non conveniens*. And prior decisions of this Court have referred to the unwisdom, unfairness and injustice of permitting policyholders to seek redress only in some distant state where the insurer is incorporated. The Due Process Clause does not forbid a state to protect its citizens from such injustice." at 648, 649 (citation omitted).

*See also* McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), where the Supreme Court upheld jurisdiction of California over a nonresident insurer who had only one contact with the state, the contract of insurance sued upon. No agent or representative of defendant was ever in the state of California, but the Court placed significant emphasis on the hardship of the plaintiff as compared to that of the defendant to travel to a distant forum, the availability of witnesses and evidence in the forum state, and considered it noteworthy that the insurer solicited insurance from the plaintiff in the forum state.

Defendant urges that Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed. 2d 1283 (1958) supports his motion to quash service. Suffice it to state that the Supreme Court could find no activity in *Hanson* to uphold jurisdiction. "The defendant trust company has no office in Florida, and transacts no business there. None of the trust assets has ever been held or administered in Florida, and *the record discloses no solicitation of business in the state either in person or by mail.*" at 251 (emphasis added).

### Eighth Circuit Criteria

The Eighth Circuit has refined the broad and rather imprecise standards of the Supreme Court into five factors:

"We also think it is fair to say that these five Supreme Court cases establish only general and not precise guidelines. Perhaps they purposely do no more than this. We observe, however, that, at one time or another in the opinions, three primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts, are stressed, and that two others, interest of the forum state and convenience, receive mention." Aftanase v. Economy Baler Co., 343 F.2d 187, 197 (8th Cir. 1965).

These same factors have been discussed and applied in Gardner Engineering Corp. v. Page Engineering Co., 484 F.2d 27 (8th Cir. 1973); Kulm v. Idaho First National Bank, 428 F.2d 616 (8th Cir. 1970); Thompson v. Ecological Science Corp., 421 F.2d 467 (8th Cir. 1970); and Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365 (8th Cir. 1969).

"Unfortunately the weight to be given to each factor cannot be measured with mathematical precision and the ultimate determination is the result of considerable subjective balancing. However, not all five of these factors need be present to support personal jurisdiction." Gardner Engineering Corp., at 31.

### The Contacts

It is clear that the factors exist to support the jurisdiction of this Court in this case.

This Court finds the quantity of contacts in this case number four. (1) Defendant admits it delivers its good to North Dakota, apparently utilizing its own tractors for delivery to dealers. (2) Repairmen are available as "trouble shooters" who on occasion do repair work

on Falcon mobile homes in North Dakota. (3) While Falcon does not deal directly with the ultimate consumer or user, it does solicit business from dealers in the state via visiting sales representatives and it may be inferred the merits of Falcon products are discussed, and tentative, if not binding, agreements to purchase Falcon homes are reached. (4) Several products, manufactured by Falcon, are utilized by North Dakota citizens as homes.

Turning to the "nature and quality" of these contacts it is necessary to set forth their meaning as defined by the Eighth Circuit:

> "The term 'nature' has apparently been used to refer to the directness of the contact with the forum state, an attempt to determine if the party, by his affirmative action, has 'invoked the benefit and protection of (the forum's) laws and could reasonably have anticipated that its act would have consequences in (the forum state).' Electro-Craft Corp. v. Maxwell Electronics, *supra*. The term 'quality' appears to have been used to refer to the relative importance of the contact to the whole transaction between the parties. . . ." Gardner Engineering Corp. v. Page Engineering Co., 484 F.2d 27, 32 (8th Cir. 1973).

The contacts here are of such quality to support jurisdiction. The sale of mobile homes to dealers in North Dakota, the delivery of mobile homes to the state, and the usage of those homes by North Dakota citizens extends the benefits, protections and obligations of North Dakota laws to Falcon. The sale of mobile homes to dealers in North Dakota is a relatively important contact to the eventual sale of the product to the plaintiff, as is the usage of the Falcon product by plaintiff in North Dakota.

Finally, the third primary factor, a connection between the causes of action and the contacts, is present. It is alleged that a mobile home being used in North Dakota by a North Dakota citizen was manufactured negligently by defendant. The sale of the trailers to North Dakota dealers, and the presence or absence of representations, is connected to the warranty causes.

As to the secondary factors, the interest of the forum state in protecting its citizens in disputes concerning the quality of their homes is obvious. Any inconvenience to Falcon by compelling it to defend in North Dakota is overshadowed by the residence of the plaintiff in North Dakota, the presence of the allegedly defective mobile home in North Dakota, and the presence of other witnesses in the state.

A recent Eighth Circuit decision which considered the due process question on nearly identical contacts as those presented herein is B & J Manufacturing Company v. Solar Industries, Inc., 483 F.2d 594 (8th Cir. 1973). In *Solar Industries,* an Illinois corporation advised a Minnesota corporation that a suit would be brought against the Minnesota corporation if it refused to discontinue the manufacture and sale of a product which allegedly infringed upon a "tire bead seater" patent held by the Illinois corporation. The Minnesota corporation commenced suit for declaratory relief against the Illinois corporation and the Eighth Circuit upheld service of process on the Illinois corporation. In addition to the correspondence between the parties concerning the patent, the court considered the following contacts:

> "Moreover, we note that the defendant is no stranger to Minnesota, and that it had a number of related contacts in the forum. The defendant advertised its products in national publications which were distributed in Minnesota, and it sold a number of its other products to independent distributors located in the state. It maintained 'trouble shooters' who were available to visit the state when necessary to aid users of the firm's products, though these had to be shipped to the firm's Illinois office for such service. Furthermore, it is significant that prior to the defendant's acquisition of the patent, its assignor had threatened the plaintiff with an infringement suit; that the assignor had sold the disputed product in Minnesota; and that the assignor

and the defendant, as well, had discussed the question of licensing the patent with the plaintiff.

The fact that the defendant has, itself, not directly or indirectly sold the 'tire bead seater' in the state because it did not wish the plaintiff to be able to obtain jurisdiction over it in this action hardly defeats jurisdiction here." at 598.

The contacts of the defendant are clearly sufficient under Eighth Circuit guidelines to allow the assertion of personal jurisdiction over the defendant in North Dakota.

### North Dakota Law

At this point, this Court has determined that an assertion of jurisdiction in this case would not be repugnant to the due process clause. However, the question of whether North Dakota law would subject an out-of-state corporation to service of process under the contacts here presented is another subject. "Using the test mentioned above we find no requirement of federal due process that either *prohibits* Ohio from opening its courts to the cause of action here presented or *compels* Ohio to do so." Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 446, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952). The 1969 North Dakota cases relied upon by defendant did stand for the proposition that, where an out-of-state corporation had no control over a local business that sold its products within the state, and did not maintain any office, warehouse or employees within the state, such corporation would not be subject to service of process under the state's long arm "doing business" statute. Fisher v. Mon Dak Truck Lines, Inc., 166 N.W.2d 371 (N.D. 1969). To put it another way, where a foreign corporation's products were sold to a North Dakota buyer through an independent North Dakota concern, over which the foreign corporation exercised absolutely no control (as is the case here), North Dakota courts would determine that sufficient contacts with the state were lacking, and would find that the foreign corporation was not "doing business" in North Dakota pursuant to the state's then existing long arm statute. Scranton Grain Co. v. Lubbock Machine & Supply Co., 167 N.W.2d 748 (N.D. 1969). Defendant's reliance on these two cases is misplaced. Since 1969, the state's long arm statute has been expanded twice and it is the state's long arm statute as it existed in 1969 which served as the basis for the above decisions; the State Supreme Court did not found its decision on a narrow view of due process as asserted by defendant. On July 1, 1969, the state legislature enacted N.D.C.C. § 28–06.1–02. The applicability of § 28–06.1–02 to the *Scranton Grain Co.* facts was considered by the Supreme Court of North Dakota in 1971. Scranton Grain Co. v. Lubbock Machine & Supply Co., 186 N.W.2d 449 (N.D. 1971). There was no issue raised as to the sufficiency of contacts under § 28–06.1–02, as a basis for service on a foreign corporation which delivered an allegedly defective product into the state, but did not control the distribution of the product or maintain any office, agent, employee or property in the state. In the second *Scranton Grain Co.* case the court did raise the issues of retrospective application, and the constitutionality, of § 28–06.1–02, deciding the case on the first issue. This is an indication that the court considered § 28–06:1–02 to be an expression of legislative intent to significantly expand the situations, including the *Scranton Grain Co.* factual situation, where service of process would be valid upon nonresident corporations.

Finally, the North Dakota Supreme Court adopted Rule 4(b)(2)(B) on June 28, 1971, which superseded § 28–06.1–02. It appears that the Supreme Court of North Dakota considers these enactments to bring North Dakota in line with other jurisdictions which permit service of process on foreign corporations to the fullest extent possible within due process limits. In the first *Scranton* case, the North Dakota Supreme court considered the effect of § 28–06.1–02:

"The Legislative Assembly, which recently concluded its session, obviously realized that our present statutes pro-

viding for service upon foreign corporations are not so broad in their scope as are the statutes or rules of procedure in other jurisdictions. In an attempt to bring our statutes on this subject in line with those of other jurisdictions, the 1969 Legislature enacted into law Senate Bill No. 412 [§ 28–06.1–02]. This Act, when it becomes effective on July 1, will broaden the jurisdiction of our courts over ronresidents transacting business in this State and permit service of process upon nonresidents previously exempt under our law." 167 N.W.2d 748, 753.

The North Dakota Supreme Court also considered the broad reach Rule 4(b)(2)(B) was to have:

"We would also point out that hearings have already been held in this court on proposed new rules of civil procedure and proposed amendments to existing rules of civil procedure. These proposed changes include a complete restatement of Rule 4, providing for service of process. If this new Rule 4 is adopted as now proposed, the extent of application of the rule providing for service of process upon nonresidents will be greatly enlarged." at 753.

The Eighth Circuit placed great emphasis upon the expression of the Supreme Court of Minnesota respecting the broad application of that State's out-of-state service statute. B & J Manufacturing Company v. Solar Industries, Inc., 483 F.2d 594 (8th Cir. 1973). See also Gardner Engineering Corp. v. Page Engineering Co., 484 F.2d 27 (8th Cir. 1973), which considered the broad application of an Arkansas statute, specifically the exact language relied upon by plaintiff in Rule 4(b)(2)(B), North Dakota Rules of Civil Procedure.

In conclusion, the language of Rule 4(b)(2)(B) reflects the breadth of its application. The rule is couched in terms of "contacts" and not in terms of "doing business". It is also noteworthy that a contract with the aggrieved person is not necessary to base service upon a foreign corporation; rather the act authorizes "jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person's . . . *supplying* services, goods, or other things in this state." (emphasis added). This Court has previously given Rule 4(b)(2) an expansive construction in Keller v. Clark Equipment Company, 367 F.Supp. 1350 (D.N.D.1973), where service upon a foreign corporation was sustained upon a single contract between the parties.

This Court finds that there are sufficient contacts present to support the jurisdiction of this court over Falcon Homes, Inc. under the Due Process Clause and the laws of North Dakota.

## II. VENUE

Defendant has petitioned the court pursuant to 28 U.S.C. § 1404 to remove this action from this court to the United States District Court for the District of Kansas. Venue in this case is founded upon 28 U.S.C. § 1391(a) which provides:

"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose."

The cause of action, if any, arose in North Dakota, and the plaintiff resides therein.

Section 1404(a) reads:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The majority of courts consider the plaintiff's choice of a proper forum as the paramount consideration in any transfer request, and this choice will not be disturbed unless the balance of inconvenience is strongly in favor of the movant. Shutte v. Armco Steel Corporation, 431 F.2d 22 (3rd Cir. 1970), cert. den.

401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1970); Akers v. Norfolk & Western Railway Co., 378 F.2d 78 (4th Cir. 1967); A. Olinick and Sons v. Dempster Bros. Inc., 365 F.2d 439 (2nd Cir. 1966); Harrison v. Capivary, Inc., 334 F.Supp. 1141 (E.D.Mo.1971). "Since venue is a procedural rule of convenience, the convenience of the aggrieved party should be first accommodated." Gardner Engineering Corp. v. Page Engineering Co., 484 F.2d 27, 33 (8th Cir. 1973).

As such, a defendant must make an appropriate affirmative showing that the proposed transferee district offers greater convenience to all concerned. U. S. Industries, Inc. v. Procter & Gamble Co., 348 F.Supp. 1265 (S.D.N.Y.1972). Defendant, as support for his contention that the convenience of the parties and the witnesses would be served, has submitted an affidavit of the Chairman of the Board of Falcon, which contains many assertions, all of which point to Falcon's lack of contact with North Dakota—facts which support a finding that Falcon will be inconvenienced by defending in North Dakota. However, the same factors that support the personal jurisdiction of this court also bear against the removal of this action to the defendant corporation's home state. The plaintiff resides in North Dakota, the evidence is in North Dakota, the dealer who sold the allegedly defective mobile home is based in North Dakota, witnesses who would testify as to the condition of the mobile home reside in North Dakota, and Falcon extends its personnel and its products into North Dakota. In short, defendant has failed to persuade this Court that the inconvenience to defendant in defending this suit in North Dakota overcomes the inconvenience of the plaintiff in bringing the action in Kansas. A mere showing of inconvenience to one party is not enough where the proposed transfer would shift the inconvenience to the other party. Atlas Financial Corporation v. Transamerica Insurance Co., 340 F.Supp. 688 (E.D.Pa. 1972); Kaiser Industries Corp. v. Wheeling-Pittsburg Steel Corp., 328 F.Supp.

365 (D.Del.1971). Therefore, the defendant's petition for removal must be denied.

### III. MOTION TO DISMISS

Defendant also moves this Court to dismiss, contending that plaintiff has failed to state a cause of action. This motion is based upon a complaint that is somewhat less than model; the defendant essentially complaining that the complaint is confusing. It is true that while the complaint sets forth several theories, it does not segregate these theories into separate causes of action under Roman numeral headings.

However, this court finds that the complaint meets the requirement of Rule 8 (a)(2) which requires no more than "a short and plain statement of the claim showing that the pleader is entitled to relief." The objective of Rule 8(a)—fair notice—has been accomplished, and it is clear from the complaint that plaintiff is relying upon negligence, breach of express and implied warranties, and strict liability in his claim for relief based upon an allegedly defective mobile home manufactured by defendant.

More specifically, defendant states plaintiff has failed to state a claim because there is no allegation that Falcon owed a duty to defendant, and there is no allegation as to what Falcon's negligence was. Defendant also attacks the breach of warranty theories for lack of privity. Defendant appears to be relying on the old rules of pleading which required claimants to set forth all elements, and their supporting facts, and in a sense objects to the complaint's failure to anticipate a defense based on privity. Plaintiff has met the "short and plain statement" requirement, and the manner by which defendant may clear its confusion is through usage of the broad discovery tools provided in the rules. *See* 2A Moore's Federal Practice, ¶¶ 8.13, 8.14.

### CONCLUSION

In conclusion, this Court finds that Falcon has sufficient contacts with the

State of North Dakota to support an assertion of jurisdiction over Falcon by this Court under North Dakota law. It is also held that this assertion of jurisdiction does not violate Due Process Clause requirements. It is further found that the interests of justice and convenience of the parties and witnesses does not require a change of venue to Kansas. Finally, the Court finds that the complaint is not fatally defective and meets the minimal requirements of Rule 8(a)(2).

It is therefore ordered that the motions of the defendant, herein, are denied.