**Gerald SHERN, Plaintiff,**

**v.**

**TRACTOR SUPPLY COMPANY OF GRAND FORKS, et al., Defendants.**

**Civ. No. A2–74–66.**

United States District Court, D. North Dakota, Northeastern Division.

Oct. 1, 1974.

---

Gerald J. Haga, Degnan, McElroy, Lamb, Camrud & Maddock, Ltd., Grand Forks, N. D., for plaintiff.

H. Patrick Weir, Vogel, Vogel, Brantner & Kelly, Fargo, N. D., for Tractor Supply & TSC Industries, Inc.

Timothy Q. Davies, Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, N. D., for American President Lines.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

This action arises out of the entry by plaintiff into a contest sponsored and promoted by Defendant Tractor Supply Company (TSC) of Grand Forks, Inc. The contest, according to the complaint, was contained in an advertising supplement which read in part:

"Win! A glamorous three month cruise on the S. S. President Wilson. See Bombay, Hong Kong, Honolulu and more. Register now! Nothing to buy . . ."

The plaintiff alleges that in reliance upon the representations of the defendants, he registered at the TSC store in Grand Forks, and was subsequently notified in late November, 1972, that he had won the contest and was thus entitled to a "round-the-world cruise aboard the S. S. President Wilson", a vessel owned by Defendant American President Lines (American). Plaintiff states he was officially notified of his success by letter on December 15, 1972, but that he had only until January 4 or January 5 of 1973, to prepare for the cruise. Plaintiff advised defendants that he could not arrange his personal affairs in such a short time, and alleges that, in response, "defendants thereafter failed to offer a fair, reasonable or legitimate alternative to such cruise, substituting so-called cruises for much shorter time spans on cargo ships, all of which said cargo ships did not cruise the world but only the Pacific". Plaintiff bases his action on the breach of a contract allegedly existing between plaintiff and defendants, which was sealed by the act of plaintiff entering into the contest.

Jurisdiction is grounded on diversity, plaintiff being a citizen of Minnesota; Defendants TSC of Grand Forks and TSC Industries, Inc., being Delaware corporations with their principal place of business at Chicago; Defendant

American President Lines, a Delaware corporation, having its principal place of business in San Francisco; and the amount in controversy exceeding $10,000.00.

Defendant American President Lines, has moved to dismiss the action on the grounds that defendant "has maintained no contacts with the State of North Dakota sufficient to constitute 'doing business' under any meaningful view of that phrase." Defendant states by affidavit that it does not, and has never, owned property within the state, does not, and has never, maintained an office therein; has not solicited business in the state, nor entered into a contract with, or otherwise employed, any agent or any independent contractor to do so; transports no goods in the state; has not advertised within the state in any locally published publication; has not offered its stock for sale within the state, and has never conducted any meetings of its Board of Directors or Executive Committee within the state.

Plaintiff counters with the following contacts:

1. It is asserted that the contest was sponsored and promoted not only by Tractor Supply Company but also by American, as the company's name appears prominently on the advertising supplement notifying the public of the contest. Whether American President Lines sponsored and promoted the contest is open to dispute, it appearing that TSC were the sponsors and promoters of the contest, the Line merely being the means of accomplishing the awarding of the prize. However, it can be stated the appearance of the company's name on the supplement constituted advertising, as is conceded by American. The answer of TSC states that they "entered into a promotional agreement whereby TSC Industries, Inc. and American were to exchange cooperative advertising".

2. Plaintiff also asserts that the alleged contract between plaintiff and American, the subject matter of this law suit, was sealed by plaintiff entering into the contest in North Dakota.

3. A possible third contact appears in American's affidavit to the effect that the company "may possibly have contacted travel agents residing within the state by mail, and may possibly have contacted by mail, members of the Company's Seamaster's Club (which consists of former passengers who have joined the club) residing in North Dakota.

4. Finally, some mention must be made of communications on negotiations purportedly made between defendants and plaintiff concerning the contest prize. Plaintiff's complaint alleges that plaintiff was notified by letter and telephone of winning the contest, and several communications between the defendants and plaintiff followed. Any negotiations concerning the contest between plaintiff and American must have been totally without the State of North Dakota. For the purposes of passing on the motion herein, this Court will assume that the alleged contract was consummated in North Dakota, that American was promoting its services in North Dakota, by advertising in connection with the contest, that American has distributed informational material to travel agents in North Dakota concerning its recreational product, and that American has communicated with members of its Seamaster's Club, who reside in North Dakota, by mail. The question, given these assumptions, is whether American has sufficient contact with the State of North Dakota, under the due process clause of the Fourteenth Amendment, and the applicable North Dakota long-arm statute, for this Court to exercise jurisdiction over American.

 American's reliance upon a "doing business" criteria as a showing that plaintiff must make in order for this Court to assert jurisdiction is outdated. No longer is it necessary to show that a corporation is "doing business" in the state in the sense that American uses the phrase; namely, "some sort of continuity of conduct indicating a corporate intent to conduct a continuous business". Until 1969, this was the criteria in North Dakota. How-

ever, the state's long-arm statute has since been expanded twice. N.D.C.C. § 28–06.1–02 (1969); Rule 4(b)(2), North Dakota Rules of Civil Procedure, adopted by the North Dakota Supreme Court on June 28, 1971. Rule 4(b)(2), as applicable to this case, reads:

> "(2) *Personal jurisdiction based on contacts.*—A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person's
>
> (A) transacting any business in this state;
>
> (B) contracting to supply or supplying services, goods, or other things in this state. . . ."

After a detailed analysis of the relevant North Dakota cases and the language of the act itself, this Court, in Vasquez v. Falcon Coach Co., Inc., 376 F.Supp. 815 (D.N.D. filed, 1974), concluded:

> "It appears that the Supreme Court of North Dakota considers these enactments to bring North Dakota in line with other jurisdictions which permit service of process on foreign corporations to the fullest extent possible within due process limits. . . .
>
> In conclusion, the language of Rule 4(b)(2)(B) reflects the breadth of its application. The rule is couched in terms of 'contacts' and not in terms of 'doing business'. It is also noteworthy that a contract with the aggrieved person is not necessary to base service upon a foreign corporation; rather the act authorizes 'jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person's . . . supplying services, goods, or other things in this state. This court has previously given Rule 4(b)(2) an expansive construction in Keller v. Clark Equipment Company, 367 F.Supp. 1350 (D.N.D.1973), where service upon a foreign corporation was sustained upon a single contract between the parties." at 11, 12 of opinion.

Plaintiff is correct in referring to the North Dakota statute as a "single act" statute whereby, consistent with due process standards, a single tortious act or a single contract *may* constitute a sufficient contact with a state upon which its courts can base jurisdiction over the party committing the tort. However, plaintiff's suggestion that the mere consummation of a contract in the forum state, without more, is a sufficient contact upon which to base jurisdiction under Rule 4(b)(2) is misplaced. In Keller v. Clark Equipment Company, 367 F.Supp. 1350 (D.N.D.1973), this Court considered the sufficiency of manufacturing licensing agreements between the plaintiffs, North Dakota residents, and Clark A.G., the parent company of Clark Equipment Company. In *Keller*, this Court held that plaintiff must show something more than the making of a contract in North Dakota to satisfy the dictates of Due Process and Rule 4(b)(2).

> "Although the United States Supreme Court has not yet determined whether a single contract is a sufficient basis for jurisdiction, in the case of McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the court did sustain state jurisdiction on the basis of a single insurance contract.
>
> The facts of the specific case will often be determinative of whether the single act or contract will serve as a viable basis for jurisdiction. Bonhiver v. Louisiana Brokers Exch. Inc., 255 F.Supp. 254 (D.Minn.1966). In this view, the North Dakota Supreme Court has said that whether a foreign corporation is doing business in the state so as to be subject to service of process hinges on the facts of the case. Fisher v. Mon Dak Truck Lines, Inc., 166 N.W.2d 371 (N.D. 1969).

Rule 4(b)(2) of the North Dakota Rules of Civil Procedure provides for personal jurisdiction over any person who transacts 'any business' in the state. This is typical of 'single act' statutes which are more encompassing than the traditional 'doing business' statutes. In Minnesota, the single act statute has been given a very broad reading so as to provide jurisdiction over any case in which the state has a reasonable interest in providing a remedy. United Barge Co. v. Logan Charter Service, Inc., 237 F.Supp. 624 (D.Minn.1964). . . .

Whether the agreement entered in between the Kellers and Clark A.G. is enough for in personam jurisdiction requires a chary examination of the situation. Clark A.G. maintains a liasion engineering employee in North Dakota with Melroe Division of Clark Equipment. It is a reasonable inference that the Kellers were contacted, with reference to the patents, by someone representing Clark A.G. It is further a reasonable inference that Clark A.G. became aware of the plaintiff's patents through its close association with the Melroe Division of Clark Equipment. The separate agreements between the Kellers and Clark Equipment and Clark A.G. appear to sustain these inferences as evidenced by the dates, signatures and addresses provided in the agreements.

Additionally, the agreements each provide for continuing royalty payments to be made to the Kellers, residents of the State of North Dakota, and if there is a nonpayment of royalties, the Kellers are the ones who are adversely affected. While Clark A.G. is not doing business in North Dakota, this Court concludes that Clark Equipment and Clark A.G. were inextricably involved with Kellers in the negotiations and execution of the patenting licensing agreements, and that Clark A.G. comes within the minimum contacts rule." 367 F.Supp. at 1353, 1354.

## SUBSTANTIAL CONNECTION BETWEEN FORUM AND CONTACTS NECESSARY

Jurisdiction based upon a single contract under single act statutes with language approximating that of North Dakota's Rule 4(b) has been upheld in the Eighth Circuit when measured against due process standards. Caesar's World, Inc. v. Spencer Foods, Inc., 498 F.2d 1176 (8th Cir. 1974) (Iowa Code § 617.-3); Gardner Engineering Corp. v. Page Engineering Co., 484 F.2d 27 (8th Cir. 1973) (Ark.Stat.Ann. § 27–2502); Thompson v. Ecological Science Corporation, 421 F.2d 467 (8th Cir. 1970)(Ark. Stat.Ann. § 27–2502); Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365 (8th Cir. 1969) (Minn.Stat. § 303.13, subd. 1(3) (1965). See also Clark v. Keller, supra, (Rule 4(b)(2), North Dakota Rules of Civil Procedure); Sporcam, Inc. v. Greenman Bros., Inc., 340 F.Supp. 1168 (S.D.Iowa 1972) (Iowa Code § 617.3); Ventling v. Kraft, 83 S.D. 465, 161 N.W.2d 29 (D.S.D. 1968), (S.D.C.L. § 47–8–17). However, the above cases are not predicated upon the execution or consummation of the subject contract in the forum state *per se*; rather, the Eighth Circuit has stated that such contracts must be found to have a substantial connection with the forum state before a court sitting in that state can exercise jurisdiction over one of the parties to that contract and still comport with traditional notions of fair play and substantial justice under due process. Caesar's World, Inc., *supra*, 498 F.2d at 1180. To assist in determining whether a given contract has the requisite "substantial connection" with the forum state, the Eighth Circuit has provided particular guidelines:

(1) The nature and quality of the contacts with the forum state.

(2) The quantity of contacts with the forum state;

(3) The relation of the cause of action to the contracts;

(4) The interest of the forum state in providing a forum for its residents; and

(5) The convenience of the parties.[1]

## APPLICATION OF EIGHTH CIRCUIT CRITERIA

■ Considering the contacts, it is to be noted that the convenience of the parties and the interest of the forum state are secondary factors[2] of less importance than the first three factors. Certainly, the convenience of the parties in this case is in favor of the non-corporate plaintiff, as it usually is, but there must, nevertheless, be contacts of sufficient nature, quality, and quantity, related to the cause of action before the interests of convenience of the parties and interest of the forum in protecting her citizens[3] can be determinative in close cases. In this case, the forum state's interest in protecting her citizens is immaterial, as plaintiff is a resident of Minnesota.

There are few contacts with the forum state. Turning to the "nature and quality" of these contacts it is necessary to set forth the meaning of these terms as defined by the Eighth Circuit:

"The term 'nature' has apparently been used to refer to the directness of the contact with the forum state, an attempt to determine if the party, by his affirmative action, has 'invoked the benefit and protection of (the forum's) laws and could reasonably have anticipated that its acts would have consequences in (the forum state). Electrocraft Corp. v. Maxwell Electronics Corp., *supra*. The term 'quality' appears to have been used to refer to the relative importance of the contact to the whole transaction between the parties. . . ." Gardner Engineering Corp. v. Page Engineering Co., 484 F.2d 27, 32 (8th Cir. 1973). A review of the Eighth Circuit cases applying these criteria make it clear that the contacts herein are not of such nature or quality to justify the assertion of the jurisdiction of this Court over American. The following contacts, recognizing that most contacts, standing alone, are not controlling or determinative of the question, have been emphasized by the Eighth Circuit in determining whether an assertion of jurisdiction over a party to a contract is consistent with due process, and are telling as to the nature and quality required to meet due process standards.

1. Was the contract with a resident of the forum state? Thompson v. Ecological Science Corporation, 421 F.2d 467, 470 (8th Cir. 1970); Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365, 368, 369 (8th Cir. 1969). This contact bears on the impact of the contract on the commerce of the state, whether the defendant corporation purposely invoked the benefit and protection of the state's laws, and whether plaintiff could have reasonably anticipated that its act would have consequences in North Dakota. The alleged contract is not with a resident of North Dakota, and thus has little effect on the commerce of the state, and the nature of the contract whereby American was to provide a prize to the winner of a contract hardly indicates a purposeful attempt to invoke the protection of North Dakota laws, nor can it be said that American could have anticipated that its role in the contest would have consequences in the state.

1. The above criteria have been discussed extensively and applied in the Eighth Circuit opinions listed above, as well as in Block Industries, Inc. v. DHJ Industries, Inc., 495 F.2d 256 (8th Cir. 1974); Kulm v. Idaho First National Bank, 428 F.2d 616 (8th Cir. 1970); Aftanese v. Economy Baler Company, 343 F.2d 187 (8th Cir. 1965); and by this court in Falcon Coach Co., Inc. v. Vasquez, 376 F.Supp. 815 (D. N.D. filed 1974).

2. The Eighth Circuit has referred to the two factors as secondary in Gardner Engineering Corp., *supra*, 484 F.2d at 31; *Thompson, supra*, 421 F.2d at 469; and *Aftanese, supra*, 343 F.2d at 197.

3. *See* Thompson v. Ecological Science Corporation, 8 Cir., 412 F.2d 467, 470 (1970).

2. Were the negotiations concerning the contract actively and voluntarily participated in by the parties in the forum state? Gardner Engineering Corp. v. Page Engineering Co., 484 F.2d 27, 32 (8th Cir. 1973); Kulm v. Idaho First National Bank, 428 F.2d 616, 619 (8th Cir. 1970); Thompson, supra, 421 F.2d at 469, 470; Electro-Craft, supra. 417 F.2d at 369; See also Keller, supra, 367 F.Supp. at 1354. The following language from Thompson bears directly on the lack of contact with North Dakota by American, for if negotiations were carried on after the consummation of the purported contract, these communications in the form of new offers or counter-offers were not carried on in North Dakota, and did not concern a citizen of the state:

"In the instant case, although the number of separate contacts with the state were not many, the pervasive contact was the negotiations leading up to the execution of the actual contract. This conference lasted a period of two days and was conducted in Little Rock, Arkansas. In addition, there were also several minor contacts in Arkansas involving the subsequent telephone calls necessary to complete the agreement. The initial draft of the agreement was itself prepared in Arkansas and executed there by the Thompson group. *The fact that the actual final execution of the contract may have been in Florida, rather than in Arkansas, is immaterial.*

It is undisputed that during the negotiations the agents of Ecological were physically present in Arkansas. We deem it significant that the defendant's officers purposefully and voluntarily entered the State of Arkansas to induce residents thereof to cancel one contract and negotiate another. It is clear that Ecological availed itself of the privilege of conducting activities within the State of Arkansas and had thereby invoked the benefits of its laws while there, thus satisfying one of the prerequisites for jurisdiction." 421 F.2d at 469, 470. (citations omitted) (emphasis added)

Due to the nature of the purported contract, there were no prior negotiations concerning the terms thereof, and at most, American's role in the contest consisted of a unilateral offer to provide a cruise to the winner. This tenuous connection emphasizes the lack of substance of American's contact with the state. The utilization of a contest for advertising purposes is not a purposeful invoking of the protection of the forum's laws, nor is it, standing alone, the type of substantial activity within the state upon which to base jurisdiction of this court. It is noteworthy that Thompson considered the place where the contract was executed immaterial to the determination of whether sufficient contacts existed, choosing to focus its examination upon the activity of the nonresident party within the state, and the consequences of the contract within the state. *See also Electro-Craft*: "While the contract was consummated in Texas, contractual consequences were reasonably anticipated in Minnesota." 417 F.2d at 369.

3. The consequences of the contract, and whether it was to be performed within the forum state, has been determinative of many jurisdictional questions concerning non-residents. If the heart of the controversy—in this case, the performance of the contract and the breach of obligations thereunder—were to have, or has, no consequences within the state, there is nothing upon which to hinge the jurisdiction over the non-resident defendant, for, under traditional concepts of justice and fairness, the nonresident could not foresee the consequence of a suit in the state. In each of the cases discussed above where jurisdiction was upheld on the basis of a contract, the contract was to be performed in whole or in part within the forum state, or the consequences arising from the contract substantially affected a citizen, and the commerce, of the forum state. Caesar's World, Inc. v. Spencer

Foods, Inc., 498 F.2d 1176, 1180, 1181 (8th Cir. 1974); *Gardner Engineering Corp., supra,* 482 F.2d at 32; *Thompson, supra,* 421 F.2d at 470; *Electro-Craft, supra,* 417 F.2d at 369.

■ Reading the applicable long arm statute in this case, it is clear that the mere making of a contract within the state does not bring it within Rule 4(b)(2)(A), North Dakota Rules of Civil Procedure, providing for the exercise of jurisdiction over persons "transacting any business in this state." In Travelers Health Association v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950), the Supreme Court rejected the argument that a state's exercise of jurisdiction must be determined by the place of contracting:

> " . . . Instead we accorded 'great weight' to the 'consequences' of the *contractual obligations in the state* where the insured resided and the 'degree of interest' that state had in seeing that those obligations were faithfully carried out." at 648.

To construe North Dakota's long-arm statute as allowing an assertion of jurisdiction in this action where no obligations of the contract were to be performed in the state, and no other consequences concerning the state exist, would set up Rule 4(b) of the North Dakota Rules of Civil Procedure for a constitutional attack as violating the standards of due process.

Furthermore, if assertion of personal jurisdiction over a nonresident is to be predicated upon the making of a contract, Rule 4(b)(2)(B) would be the more applicable section, and under that subsection the nonresident must contract "to supply . . . services, goods, or other things in this state. . . ." This is akin to the Minnesota statute which bases the assertion of jurisdiction over nonresident corporations on claims arising out of "a contract with a resident of Minnesota to be performed in whole or in part by either party in Min-

nesota. . . . " Minn.Stat. § 303.13, subd. 1(3) (1965); *See* Iowa Code § 617.3; S.D.C.L. § 47–8–17. None of the obligations of the contract are to be performed in North Dakota and it cannot be said that the state has any connection with a contract between a nonresident corporation and a nonresident person, the performance of which is to be totally without the state. It is well to note that in Minnesota, Iowa, and South Dakota, the courts have construed the legislative enactments in those states to provide residents with the maximum protection of their respective courts from damages and injuries occasioned them through acts or omissions of a contractual nature, by a nonresident when that nonresident has had the necessary minimal contacts with the state to comply with federal due process. Mid-Continent Freight Lines, Inc. v. Highway Trailer Industries, Inc., 291 Minn. 251, 190 N. W.2d 670, 673 (1970); Sporcam, Inc. v. Greenman Bros., Inc., 340 F.Supp. 1168 (S.D.Iowa 1972); Ventling v. Kraft, 83 S.D. 465, 161 N.W.2d 29, 34 (S.D.1968). The mere making of a contract in the forum state is not a sufficient contact *per se* under any of the applicable state statutes, rather the contract must be performed in whole or in part in the forum state. The Supreme Court of North Dakota, in adopting Rule 4, wished to bring the state in line with neighboring states as to the assertion of jurisdiction over nonresidents providing for the maximum extension of the power of its courts for the protection of its citizens consistent with limits of due process. *See Vasquez, supra.* Those limits require a substantial connection with the forum state—namely, performance of the contract, in whole or in part, within the state, and these limits apply under subdivision (A) and (B) of Rule 4(b)(2).

■ Under the criteria set forth by the Eighth Circuit the contacts of American with North Dakota lack the substance required under due process

standards to enable this court to assert jurisdiction.[4]

## AN ILLUSTRATIVE AND PARALLEL COLORADO DECISION

Finally, the Supreme Court of Colorado has considered the question presented to this court under a quite similar factual situation. In Safari Outfitters, Inc. v. Superior Court, 167 Colo. 456, 448 P. 2d 783 (1969), a resident of Colorado named Powers filed a complaint in the respondent Colorado court alleging that an Illinois Corporation, Safari, had breached a contract to arrange an African safari for him. Safari had advertised in three nationally distributed sportsmen's magazines over a period of several months. Responding to one of the advertisements, which he saw in a magazine delivered to his Denver home, Powers wrote to inquire further of Safari, which had offices in Chicago. Safari mailed brochures and a newsletter to Powers. Numerous communications between the parties ensued, including several letters addressed to Powers at his Denver residence and at least one interstate phone call. There were three checks, totalling over $10,000, drawn on a Denver bank by Powers, and made payable to Safari, who accepted them as payment for his services. Moreover, numerous tickets, itineraries, brochures, passports, and other documents were mailed to Powers in Denver by Safari. The question as to whether, on the above facts, jurisdiction was constitutionally permissible pursuant to the terms of the Colorado long-arm statute was answered in the negative. That statute subjected any person who engages in "transacting of any business within this state" to the jurisdiction of Colorado's courts. The breadth of the Colorado statute, and the due process test applied, was set forth as follows:

"By enacting the latter statutes, our legislature intended to extend the jurisdiction of our courts to the fullest extent permitted by the due process clause of the fourteenth amendment to the United States Constitution.

Due process requires that in order to subject a defendant to a judgment in personam, if he is not within the forum state, he must have certain minimum contacts with the forum state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. But '[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with a forum state. * * * [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'. Hanson v. Denckla, 375 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283". 448 P.2d at 784 (citations omitted in part) (emphasis added).

In examining the contacts of Safari with Colorado, which are more substantial than the contacts of American with North Dakota, the Supreme Court of Colorado was not impressed:

"Advertising in national magazines distributed within the forum state does not alone constitute a transaction of business within the state. If the rule were to the contrary, advertisers in any nationally distributed magazine would be subject to the jurisdiction of each of the states in which the magazines are distributed. Such a contact is simply too tenuous upon which to found a claim of jurisdiction.

Nor do the interstate telephone conversations, correspondence, and the re-

---

4. The cause of action herein does not relate to some of American's contacts with North Dakota, specifically its communications with members of its Seamaster's Club, and the mailing of brochures or other information concerning its services to travel agents in the state. Even if the cause were related, these contacts lack the nature and quality required to meet Due Process standards.

ceipt in Illinois by petitioner of checks drawn on a Denver bank by respondent Powers constitute acts by which the petitioner purposefully availed himself of the privilege of conducting activities within Colorado, thus invoking the benefits of its laws.

It appears from the record in the instant case that petitioner was to act as an agent in arranging the African safari for Powers. That is, petitioner was employed by Powers in Chicago to make reservations, to purchase the necessary tickets, to schedule itineraries, and in general to handle all of the stateside work required to make the safari a success. Once Powers arrived in Africa, local safari guides were to see to it that he was given an opportunity to take the trophies of his choice.

*There is nothing in the record to indicate that any of petitioner's work as an agent was done in Colorado.* To the contrary, it appears that all of his work was done by telephone, telegraph and letter correspondence directed from petitioner's Chicago office to persons outside Colorado. Many of the letters in the record, for example, refer to various communications with African guides. Besides the brochures and leaflets which were sent in response to Powers' inquiry, only passports, travel plans, tickets and the like were sent to Denver." 448 P.2d at 785 (emphasis added) (citations omitted)

This Court agrees with the Colorado court's disposition of *Safari.* The distinctions between *Safari* and the case at bar do not support plaintiff's position that this Court has jurisdiction over American. In *Safari,* the negotiations concerning the contract were carried on in part in Colorado, and the allegedly aggrieved party to the contract was a resident of that state. The Court found those contacts, and contacts identical to those asserted by plaintiff in this case, to be insufficient. The most persuasive point in *Safari* was the lack of performance of the subject contract in the forum state, as is the case under the Eighth Circuit criteria discussed above.

It is ordered that the motion to dismiss this action by Defendant, American President Lines, for lack of personal jurisdiction over it, is hereby granted.