DREYFUS COMPANY, INC., Plaintiff,

v.

ROYSTER COMPANY, Defendant.

No. PB–C–79–14.

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

Nov. 25, 1980.

William S. Arnold, Crossett, Ark., for plaintiff.

E. W. Brockman, Jr., Brockman & Brockman, Pine Bluff, Ark., for defendant.

MEMORANDUM AND ORDER

HENRY WOODS, District Judge.

On February 6, 1978 the plaintiff entered into an oral contract for sale to the defendant of 5,000 bushels of Arkansas Certified Bragg soybean seed at $13.50 per bushel. This oral agreement was confirmed by a written memorandum dated February 15, 1978. (Exhibit "1" to defendant's Motion for Summary Judgment.)  Paul Dreyfus acted as agent for the plaintiff, and Jim Holloway acted as agent for the defendant in all of the transactions concerning this purchase.  The written memorandum re-

flects that the purchase price was $13.50 per bushel, that the shipping terms were FOB Parkin, Arkansas, that a March delivery was contemplated, and that the sale of the beans was subject to final certification. Regarding final certification, the memorandum provides that the seller would notify the customer when the soybeans had been certified. The defendant–buyer was to make immediate pickup upon certification, and the memorandum provided that immediate pickup was to be construed as approximately five days. There was to be a storage charge of 15¢ per bushel per month for seed left after March 31, 1978. Subsequent to the written memorandum, the next contact between Dreyfus and Holloway was on or about February 28, 1978, when Dreyfus informed Holloway that some of the Bragg soybeans had passed certification. (Dreyfus deposition at 21–23; 29.) Dreyfus asserts in his deposition that Holloway advised him on this same date (February 28, 1978) that Royster was not prepared to accept delivery at that time. It was not until May 8, 1978 that these parties had further contact. On this date plaintiff informed the defendant that the soybeans which the plaintiff intended to use to satisfy the terms of the contract might have failed to pass certification (Dreyfus deposition at 32).

At the time of contracting on February 15, 1978, Holloway was told by Dreyfus that the soybeans which plaintiff intended to sell to the defendant would be obtained by plaintiff from a company in Parkin, Arkansas. The beans which failed the final certification and which were the topic of the contact between plaintiff and defendant on May 8, 1978 were beans being held by a company in Parkin, Arkansas.

On May 9, 1978 Dreyfus confirmed that the beans had failed to pass final certification and advised the defendant that he felt he could locate other soybeans to satisfy the terms of the contract. Holloway informed the plaintiff that he did not think that the defendant needed the beans any longer. (Affidavit of James H. Holloway, Exhibit "4" to defendant's Motion for Summary Judgment, and Dreyfus deposition at 32.) Later on this same day (May 9, 1978), Drey-

fus called and informed Holloway that he had located Arkansas Certified Bragg soybeans to satisfy the February 15, 1978 contract. During the interim between the two May 9, 1978 phone calls, the defendant had located and contracted to purchase Arkansas Certified Bragg soybeans from another seller. The defendant informed plaintiff of this fact during the second phone call and advised that the defendant no longer chose to honor the February 15, 1978 contract.

On subsequent occasions the defendant reiterated its position and has refused to accept delivery of the soybeans and has refused to make payment for them. The plaintiff, in an attempt to mitigate its damages, disposed of the soybeans at $6.83 per bushel and filed the instant litigation seeking to recover from the defendant the difference in the $13.50 contract price and the $6.83 per bushel price it received in its efforts to mitigate. The defendants objected to jurisdiction of this court, but after a hearing was held the court issued its memorandum opinion and order on April 3, 1980 sustaining jurisdiction and denying the defendant's motion to dismiss. *Dreyfus Co. v. Royster Co.*, 487 F.Supp. 531 (E.D.Ark. 1980).

Extensive discovery has been completed by the parties, and on October 24, 1980 the defendant filed a motion for summary judgment alleging that there were no genuine issues of material fact remaining in the case and that it was entitled to judgment as a matter of law. The plaintiff's response to the defendant's motion largely relies on the affidavit of Mr. Paul Dreyfus, president of the plaintiff–corporation. In his affidavit Dreyfus makes certain statements regarding the specific transaction at issue and further, seeks to clarify and amplify certain terms of the February 15, 1978 contract by offering applicable usages of trade terms which arguably should be relied on in interpreting the February 15, 1978 contract.

The duty of this court in considering the defendant's motion for summary judgment is to determine whether or not any genuine issues of material fact remain and whether

or not the defendant is entitled to judgment as a matter of law. The moving party, defendant, bears the burden of demonstrating to this court that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Rule 56 of Fed.R.Civ.P.

## I

## CASUALTY TO IDENTIFIED GOODS

■ The first argument advanced by the defendant to substantiate its claim that it is entitled to summary judgment is grounded in Article 2, § 613 of the Uniform Commercial Code.[1] The defendant conceded and the court agrees that the primary barrier to an application of Article 2, § 613 to this transaction is a determination of whether or not the goods in this transaction were "identified." The defendant places great emphasis on the fact that the defendant was aware that the plaintiff intended to acquire the beans for resale to the defendant from a company in Parkin, Arkansas, that the designated shipping point was Parkin, Arkansas, and that the sale was made subject to final certification. However, it would seem to the court that Arkansas Certified Bragg soybeans are a fungible commodity and so long as the certification requirements and specific contractual requirements are satisfied by a seller, it is highly unlikely that a buyer would be concerned with whether or not a particular lot of soybeans was utilized in satisfying the contract. Under the terms of the February 15, 1978 contract, the plaintiff was obligated to provide the defendant with 5,000 bushels of Arkansas Certified Bragg soybeans FOB Parkin, Arkansas at a price of $13.50 per bushel. Assuming that the plaintiff discharged this obligation in a timely manner (a subject which will be taken up *infra*), the defendant had an obligation to accept delivery and pay the purchase price for the beans. To read into the contract an additional term requiring the beans to have been purchased by the plaintiff from a company in Parkin, Arkansas would be to inject an element into the contract which the parties never negotiated. Also, this would add an element which should not be considered essential as far as the defendant's rights and liability under the contract are concerned. Absent goods identified when the contract is made, Article 2, § 613 is inapplicable and therefore it is unnecessary for the court to consider the other requirements for application of this code section.

## II

## FAILURE OF SOYBEANS TO PASS FINAL CERTIFICATION

■ The defendant's second argument for relieving itself of liability under the February 15, 1978 contract is that upon failure of the Parkin company beans to pass final certification both parties were relieved of their obligation under the contract. Again, a critical facet of the defendant's argument is that the soybeans which were the subject matter of the contract were identified at the time the parties entered into the contract. The defendant argues that the term "sale is subject to final certification" adds weight to the argument that the soybeans were identified at the time the parties entered into the contract. Defendant correctly argues that Article 2, § 202 permits parol evidence to be admitted to determine the intent of parties at the time they entered into the contract. However, the court has considered the factors offered by the defendant to interpret the contract and reiterates its conclusion that the soybeans at issue were not identified at the time the parties entered into the contract. Therefore, the defendant's argument that the rights and obligations of the parties terminated when a particular lot of soybeans failed to pass final certification is without merit.

---

1. While the defendant has briefed the issues regarding choice of law and whether or not the Arkansas or Alabama Uniform Commercial Code provisions will apply, it likewise concedes that since both states have practically identical provisions which are pertinent to the instant litigation, a determination of which state's code applies is not necessary. The plaintiff likewise concedes this in its response to the defendant's motion for summary judgment.

## III

## DELAY IN THE SELLER'S PERFORMANCE

The defendant's third argument is grounded in Article 2, § 615(c) which provides:

Excuse by failure of presupposed conditions.–Except so far as a seller may have assumed a greater obligation and subject to the preceding section on substituted performance:

(a) Delay in delivery or non–delivery in whole or in part by a seller who complies with paragraphs (b) and (c) is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the non–occurrence of which was a basic assumption on which the contract was made . . . .

(b) Where the causes mentioned in paragraph (a) affect only a part of the seller's capacity to perform, he must allocate production and deliveries among his customers but may at his option include regular customers not then under contract as well as his own requirements for further manufacture. He may so allocate in any manner which is fair and unreasonable.

(c) The seller must notify the buyer seasonably that there will be delay or non–delivery and, when allocation is required under paragraph (b), of the estimated quota thus made available for the buyer.

The terms of the February 15, 1978 contract called for a March delivery and further required the defendant to pay 15¢ per bushel per month for seed left after March 31, 1978. Within these same terms the seller was required to notify the customer on certification of the soybeans. (See Exhibit "1" to defendant's Motion for Summary Judgment.) The defendant asserts that the plaintiff did not inform the defendant that there would be some problem or delay in the delivery of the soybeans until May 8, 1978 and that it failed to make an allocation of its production upon failure of certification of the soybeans. Therefore, defend-ants argue that the sellers were in violation of Article 2, § 615(c) and that the rights and liabilities of the defendant were terminated.

Paragraph 5 of Paul Dreyfus's Affidavit attached to the plaintiff's Response to Motion for Summary Judgment states under the applicable usage of trade, in the Arkansas soybean industry, inclusion of the term providing for a storage fee for seed left after March 31, 1978 was in effect a grant of an option to the buyer to make a pickup at the buyer's choice any time after March 1 and did not obligate the seller to further notify the buyer of availability for delivery. On this Motion for Summary Judgment, the court accepts the affidavit of Paul Dreyfus, particularly as far as paragraph 5 is concerned regarding notice to the purchaser. The court acknowledges that Article 1, § 205(4) permits the usage of trade terms in contracts to be interpreted in order to clarify the duties and liabilities of the parties under a contract. However, Article 1, § 205(4) further provides that "the express terms of an agreement and an applicable course of dealing or usage of trade should be construed whenever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade. . . ." In the instant case, a March delivery is called for and reliance on Mr. Dreyfus' assertion of the controlling usage of trade would seem to place the usage of trade in a position superior to the express terms of the contract contrary to Article 1, § 205(4). At first glance this would lead to the conclusion that the plaintiff was in breach when delivery did not take place in March.

However, in order to find the plaintiff in breach, the court would have to find that there was no genuine issue of material fact as to the term "March delivery." On the present state of the record before the court, this finding cannot be made. It is unclear (and a fact issue remains) as to whether or not the usage of trade described in paragraph 5 of the Dreyfus affidavit

recognizes the existence of the "March delivery" term. Further, the possibility exists that the "March delivery" term and the post–March 31 storage fee term are in conflict and that usage of trade must be relied upon to resolve this conflict. In light of the asserted usage of trade, the court finds that a genuine issue of a material fact is present in the resolution of these apparently conflicting terms.

■ Further, an issue of fact exists as to whether or not the February 28, 1978 communication sufficiently complied with notice of certification contemplated under the contract and/or the notice of delay required by Article 2, § 615(c). The affidavits of Dreyfus and Holloway and Dreyfus' deposition do not adequately resolve this issue. Plaintiff additionally asserts that the May, 1978 communications were timely and while the court is inclined to disagree, the court recognizes that amplification of the fact issues surrounding the February 28, 1978 communication may have a bearing on the court's ultimate decision.

As far as the necessity of the plaintiff to allocate production pursuant to Article 2, § 615(b), the court finds that a genuine issue of material fact exists as to plaintiff's ability to allocate and whether or not it was required to due to the other issues discussed, *supra* dealing with Article 2, § 615.

■ Although the plaintiff has not alleged that the May 8 and 9 phone conversations created a separate contract independent of the February 15, 1978 memorandum, the defendants have briefed this issue. Since no allegations have been made in this regard, the court need not reach a ruling regarding any potential second contract. However, the court recognizes the proposition that the statute of frauds as codified under Article 2, § 201 of the Uniform Commercial Code, would prevent the oral modification and/or formation of any new contract unless the same were evidenced by writing.

In light of the findings by this court that genuine issues of material fact exist, defendant's motion for summary judgment must be denied.