**DREYFUS COMPANY, INC., Plaintiff,**

v.

**ROYSTER COMPANY, Defendant.**

No. PB–C–79–14.

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

April 1, 1980.

Thomas S. Streetman, of Arnold, Hamilton & Streetman, Crossett, Ark., for plaintiff.

E. W. Brockman, Jr., and C. Mac Norton, Pine Bluff, Ark., for defendant.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

The defendant attacks jurisdiction in this cause by a motion to dismiss. The operative facts are not in serious dispute. Plaintiff, an Arkansas corporation, brought suit against the defendant, a Virginia corporation, for alleged failure to comply with terms of a contract under which defendant undertook to purchase 5,000 bushels of soy-

beans from plaintiff. Defendants had purchased soybeans from plaintiff during the 1977 season and on February 15, 1978 Paul Dreyfus, a corporate officer of plaintiff, called defendant's agent, Jim Holloway, in Montgomery, Alabama and solicited the purchase of beans. After this conversation the parties reduced their telephonic understanding to a written purchase order signed by both Dreyfus and Holloway. The purchase order dated February 15, 1978 was apparently executed first by Dreyfus at Lake Village, Arkansas and then sent to Montgomery where it was executed by Holloway. It specified that the beans would be of the Bragg variety and they would be certified, which meant that they would be inspected and certified by the Arkansas State Plant Board. Mr. Dreyfus testified that the beans were so inspected and certified by the Plant Board, tagged, and placed in the Howe Warehouse at Wabash Arkansas. The purchase order called for delivery "FOB-Howe-Wabash." Mr. Dreyfus further testified that Royster was either supposed to pick up the beans at Wabash or have them picked up there. Such had been the procedure during their dealings of the preceding year. The purchase order contained this notation: "Immediate pick-up upon certification (about 5 days), will notify customer upon certification. Sale is subject to final certification. There will be a storage charge of 15 cents per bushel per month for seed left after 3/31/78." The beans were never picked up, and Dreyfus testified he had to "dump" them.

There is really no serious question as to whether defendant's activities are embraced within the statutory terms. Ark.Stat.Ann. § 27–2502(C)(1)(a), on which plaintiff relies, reads as follows: "1. A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's (a) transacting any business in this State." Defendant did transact business in this state in February of 1978 and as a matter of fact transacted business here in 1977. Defendant's activities also clearly meet the requirements of Ark.Stat.Ann. § 27–2502(C)(2): "When jurisdiction over a

person is based solely upon this section, only a (cause of action) (claim for relief) arising from acts enumerated in this section may be asserted against him."

The real question in this case is whether or not there were the minimum contacts with the State of Arkansas necessary to satisfy Fourteenth Amendment due process requirements for personal jurisdiction. The parties in their briefs agree on the general principles enunciated in a series of Supreme Court decisions. The landmark case, *International Shoe v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) holds that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. at 316, 66 S.Ct. at 158. In *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) the court said: "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [the forum] State. Id. at 223, 78 S.Ct. at 201.

After these decisions there were concerted efforts in many state legislatures to extend jurisdiction over non-residents to the ultimate constitutional limit. The Uniform Long-Arm Act (Ark.Stat.Ann. §§ 27–2502 et seq.) represents the most noteworthy of these attempts. Arkansas was the first state to adopt it. See 22 Ark.L.Rev. 627, footnote 1 (1969). As a consequence the first decisions interpreting this Act were delivered by Federal Courts in Arkansas. *Waukesha Bldg. Corp. v. Jameson*, 246 F.Supp. 183 (W.D.Ark.1965) (Defective valves in hotel construction job; defendant manufacturer had no office, warehouse or inventory here and the order had been solicited by a Tennessee manufacturer's representative. Defendant's salesman made periodic visits to Arkansas and its engineer had visited the job site after the complaint regarding the valves. Jurisdiction was upheld under § 27–2502(C)(1)(a)); *Davis v.*

*Triumph Corp.*, 258 F.Supp. 418 (E.D.Ark. 1966) (Plaintiff sued defendant for breach of franchise agreement which had been in effect for 14 years. Triumph had no Arkansas employees, made no consumer sales here, maintained no office, place of business, bank account or warehouse in Arkansas. Stressing the plaintiff's purchase of merchandise from defendant over a long period of time, Judge Henley found that defendant was "transacting business" in this state.); *Brown v. Buckingham Mfg. Co.*, No. LR–67–C–173 (E.D.Ark.1968). (Plaintiff lineman claimed injuries when safety belt broke. Defendant had made belt in New York and plaintiff had purchased it in Mississippi. Defendant had sold $2,640 of its products in Arkansas in 1966 and $78 in 1967. All sales were by mail, and none of defendant's employees resided in or traveled into Arkansas. Judge Henley sustained jurisdiction); *Hallum v. Hardinge Co., Inc.*, No. H–68–C–8 (E.D. Ark.1968). (Plaintiff injured when ducts collapsed on a construction job. The defendant had manufactured the ducts in Pennsylvania and had sold $3,300 worth of products in 1963, $5,300 in 1964, and in 1965 had sold the ducts in question as part of a $131,000 order placed by a Florida corporation and delivered to a construction site in Arkansas. An employee of defendant was present on the job site. Judge Oren Harris sustained jurisdiction and leave to appeal the interlocutory order was denied. *Hallum v. Hardinge Co.*, Misc.No. 566 (8th Cir. 1968).

The Court of Appeals of this circuit contemporaneously with the above cases delivered an exhaustive and landmark decision interpreting the Minnesota "long-arm" statute and upholding Minnesota jurisdiction. In *Aftanase v. Economy Baler Co.*, 343 F.2d 187 (8th Cir. 1965) an injury was caused in Minnesota by a baler manufactured in Michigan. Solicitation of business in Minnesota was carried on by independent salesmen on a commission basis. Contracts were concluded in Michigan, and the defendant shipped the balers directly into Minnesota. Judge (now Justice) Blackmun thoroughly reviewed the constitutional implications of statutes such as the Uniform Long Arm Act. He noted that the Supreme Court precedents stress three primary factors: (1) The quantity of the contacts; (2) the nature and quality of the contacts; and (3) the source and connection of the cause of action with the contacts. Two secondary factors received mention: (1) Interest of the forum state; and (2) convenience. "The Supreme Court has certainly not indicated that all five of these factors must be present in substantial degree for jurisdiction to be constitutionally effected." Id. at 197.

The rationale of *Aftanase* and the five factors mentioned *supra* were used by the Court of Appeals for the Eighth Circuit to sustain jurisdiction in *Thompson v. Ecological Science Corp.*, 421 F.2d 467 (1970), a case arising out of Arkansas and bearing many similarities to the case at bar. Plaintiffs sued for breach of a contract by a Florida corporation, whose agents spent two days in Arkansas in negotiations leading up to execution of the contract. The initial draft was prepared at that time in Arkansas. It was sent to Florida for approval by defendant, where minor modifications were made. The final draft was then sent to Arkansas, executed here, and then returned to Florida where it was executed by officers of the defendant. Defendant conducted no other business in Arkansas. It will thus be seen that the facts concerning the execution of the contract in *Ecological Science* and in the instant case are quite similar. In both cases the contract was probably made outside Arkansas. This circumstance was not persuasive. "The fact that the actual final execution of the contract may have been in Florida, rather than Arkansas, is immaterial." Id. at 469. It is true that in *Ecological Science* representatives of the non-resident corporation came to Arkansas and spent two days in negotiations leading to execution of the contract, while here the negotiations were carried on telephonically with defendant's agent in Alabama. More than offsetting such activity on defendant's part in *Ecological Science* however is the fact that in the case at bar plaintiff and defendant had carried on a course of similar deal-

ing in the preceding year. Such a factor serves to comply with one or more of the primary tests required in *Aftanase, supra.* It also complies with the burden established in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) that "there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Id. at 253, 78 S.Ct. at 1240.

Just as in *Ecological Science,* one of the parties to the contract involved herein was an Arkansas corporation, a matter of considerable importance to the Court of Appeals. "Additionally the State of Arkansas has an interest in any contract involving its citizens, but it has a special interest in protecting the rights of its citizens under a contract negotiated and effectuated in Arkansas." 421 F.2d 467 at 470.

Another decision of the Court of Appeals of this Circuit has patent applicability to the instant case. In *Gardner Engineering Corp. v. Page Engineering Co.,* 484 F.2d 27 (8th Cir. 1973), plaintiff sued in the U. S. District Court in Arkansas for the anticipatory breach of a contract to deliver bridge components to a construction site in Arkansas. The contract was made in either Illinois or Texas after bids were taken in Missouri. Virtually the only connection with Arkansas was that *the contract was to be performed in the future in Arkansas* and that defendant's first letter stating interest in bidding on the project was sent to Arkansas. The court said: "The place of performance of a customized contract of this type is a contact of such quality as to support jurisdiction. Likewise, where the negotiations leading to a contract are initiated by a letter from the forum state or by a letter directed to the forum state, the nature of the contacts cannot be deemed to be insignificant." Id. at 32. As to performance of the contract, plaintiff Dreyfus has a much stronger case than in *Gardner Engineering Corp. v. Page Engineering Co., supra.* According to plaintiff's undisputed proof, performance was not only contemplated in Arkansas, but was completed here. The beans were grown in Arkansas, inspect-

ed here by the Arkansas State Plant Board, tagged, packaged, and delivered to a warehouse in Arkansas where they were to be picked up by defendant. In other words, plaintiff had completed his part of the bargain with total performance in Arkansas.

Finally, we must allude to the convenience of the parties. Arkansas would seem to be as convenient a forum in which to litigate this dispute as any other. Perhaps it is more convenient. Most of the pertinent testimony must necessarily come from Arkansas residents—growers, Plant Board inspectors, and warehousemen. There is no showing that Alabama would be a convenient forum. The only evidence in the record is that defendant's agent carried on negotiations from Montgomery, Alabama. There is no showing as to the extent of defendant's operations in Alabama. Virginia, where defendant is domiciled, is far from the locale of this dispute. We hardly see the justice of forcing plaintiff to go there to seek relief for the alleged breach of the contract involved herein.

While a U. S. District Court is not bound by decisions of the Supreme Court of Arkansas in interpreting the Fourteenth Amendment to the U. S. Constitution, it is worthy of note that the Supreme Court of Arkansas has given the Act in question a very expansive sweep. See *Pennsalt Chemical Corp. v. Crown Cork and Seal,* 244 Ark. 638, 426 S.W.2d 417 (1968) (jurisdiction sustained over three defendants involved in manufacture of can of Freon which exploded and injured plaintiff in Arkansas. The Freon was manufactured and packaged outside of Arkansas and defendants had derived only minimal revenue from Arkansas sales); *Safeway Stores v. Shwayder Brothers,* 238 Ark. 768, 384 S.W.2d 473 (1964) (Safeway was sued as result of a chair collapse and successfully asserted jurisdiction over the manufacturer as a third-party defendant since the latter was "using our markets and deriving profits therefrom."); *Wichman v. Hughes,* 248 Ark. 121, 450 S.W.2d 294 (1970) (Non-resident sent agent into Arkansas to buy horses from plaintiff, sent van to pick them up, and then stopped

payment on his check. He was subject to suit here under the Arkansas Long-Arm Statute for "transacting business" in this state.); *International Harvester Co. v. Hendrickson Mfg. Co.*, 249 Ark. 298, 459 S.W.2d 62 (1970) (Manufacturer of truck component installed in another state subject to suit in Arkansas where malfunction of truck injured Arkansas plaintiff); *Shannon v. Fidelity Nat. Bank*, 259 Ark. 186, 531 S.W.2d 958 (1976) (Non-resident defendant who guaranteed note payable to Arkansas bank may be sued here); *Nix v. Dunavant*, 249 Ark. 641, 460 S.W.2d 762 (1970) (Plaintiff sued a Tennessee dealer for breach of contract to purchase his cotton. Jurisdiction sustained through contract executed in Tennessee after negotiations with defendant's agent in Arkansas.) The last-cited case bears striking similarity to the case at bar as is demonstrated by the following quotation from Justice George Rose Smith's opinion: "The contract involved an Arkansas crop to be produced on Arkansas land. The grower was required to conform to exact specifications in the production, harvesting, and ginning of the crop, all of which were to take place in Arkansas. Dunavant reserved the privilege of controlling the heat and cleaning equipment to be used in ginning—activities for his own protection that had to be performed in Arkansas. When ginned, the cotton was to be delivered to a warehouse in Arkansas." Id. at 646, 460 S.W.2d at 765.

For the reasons stated above and pursuant to the authorities discussed, the motion to dismiss is hereby overruled.