**ROGER N. JOYCE & ASSOCIATES, INC., Plaintiff,**

v.

**PAOLI STEEL CORPORATION, Defendant.**

**No. PB–C–79–29.**

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

May 23, 1980.

Ed W. McCorkle, McMillan, Turner & McCorkle, Arkadelphia, Ark., for plaintiff.

Martin Gilbert, Coleman, Gantt, Ramsay & Cox, Pine Bluff, Ark., for defendant.

## MEMORANDUM OPINION AND ORDER

### HENRY WOODS, District Judge.

The facts in this case, as shown by the uncontroverted affidavit of the defendant's vice-president, Ronald Gropper, are simple and uncomplicated. Plaintiff, an Arkansas corporation, through its executive officer, Roger N. Joyce, contacted defendant's agent and discussed the possibility of purchasing steel from defendant. In its verified complaint plaintiff claimed that defendant's agent initiated the phone conversation from Pennsylvania. We do not consider this factual dispute significant. No order was accepted or agreement reached in this conversation, but Joyce was requested to come to the Pennsylvania office of Paoli to discuss the matter. Joyce did go there and met with various officials of the company. A purchase order is attached to the complaint covering certain dimensions of steel plate and dated July 6, 1978. The order recites delivery from Paoli via truck FOB Gadsden, Alabama to Dravo-Steelship Corp. Mr. Gropper denies that this purchase order was accepted and indeed there is no notation of acceptance contained thereon. On August 21, 1978 Mr. Joyce wrote the following memo to defendant's agent, Jim Godwin:

SUBJECT order #778          DATE: 8–21–78

Dear Jim:

This will confirm our telephone conversation, this date, reference the plate shipments from the Houston International Barge terminal.

Ligon Specialized Haulers, Houston, Texas, will handle the entire 600 ton shipment on the following schedule:

| 8/22 | 40T | 8/30 | 20T | 9/7 | 40T | 9/18 | 20T |
|------|-----|------|-----|------|-----|------|-----|
| 8/23 | 20T | 8/31 | 40T | 9/11 | 20T | 9/19 | 40T |
| 8/24 | 40T | 9/4 | 20T | 9/12 | 40T | 9/20 | 20T |
| 8/28 | 20T | 9/5 | 40T | 9/13 | 20T | 9/21 | 40T |
| 8/29 | 40T | 9/6 | 20T | 9/14 | 40T | 9/22 | 20T |

The above schedule should complete the entire order, but it will be essential that we work very close on this.

If you need a contact at Ligon, please call as follows:

Mrs. Unis Gaines          713–672–0533
Ligon Specialized Haulers          Houston, Texas

Thanks for all of your help and interest.

Best Wishes,

/s/ Roger

Roger N. Joyce, Jr.          SIGNED _____

Although there seems to have been a place indicated on the memo for defendant's agent to sign, no such signature appears.

In his affidavit Mr. Gropper states that Paoli did make several sales of steel to Joyce, which sales were FOB Houston terminal. Paoli advised Joyce that there was some steel available at the Houston terminal which Joyce could inspect and take it or not, as he chose. Joyce arranged for shipment, at its own expense to Arkansas. Paoli did not know where Joyce would have the steel delivered.

Paoli has no offices, agents or property in Arkansas. At no time did any employee or representative of Paoli come to Arkansas to deal with Joyce. The only person-to-person dealings between Joyce and Paoli occurred in Pennsylvania. All other dealings were by telephone or correspondence.

First of all, we find that defendant's activities are not embraced within the statutory terms of the Uniform Long Arm Act. Ark.Stat.Ann. §§ 27–2502, et seq. Plaintiff's argument on behalf of jurisdiction must rest on sections 27–2501(C)(1)(a) and (b) reading as follows: "1. A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's (a) transacting any business in this state; (b) contracting to supply services or things in this state."

With respect to subsection (a), it is clear that defendant's activities did not rise to the status of transacting any business in this state. Plaintiff places reliance on *Thompson v. Ecological Science Corp.*, 421 F.2d 467 (8th Cir. 1970). In the latter case plaintiffs sued for breach of a contract by a Florida corporation, whose agents spent two days in Arkansas in negotiations leading up to the execution of the contract. The initial draft was prepared at that time in Arkansas. It was sent to Florida for approval by defendant, where minor modifications were made. The final draft was then sent to Arkansas, executed here, and then returned to Florida where it was executed by officers of the defendant. Defendant conducted no other business in Arkansas. A recital of these facts illustrates the striking dissimilarity between *Ecological* and the case at bar. Here the plaintiff's executive officer went to Pennsylvania while in *Ecological* the Florida executives came to Arkansas. The two-day visit to Arkansas was considered most significant by the Court of Appeals in upholding jurisdiction:

> It is undisputed that during the negotiations the agents of Ecological were physically present in Arkansas. . . . We deem it significant that the defendant's officers purposefully and voluntarily entered the State of Arkansas to induce residents thereof to cancel one contract and negotiate another. It is clear that Ecological availed itself of the privilege of conducting activities within the State of Arkansas and had thereby invoked the benefits of its laws while there, thus satisfying one of the prerequisites for jurisdiction.

Nor can it be said that the statutory language of subsection (b) *supra* has been met. The agreement between the parties was for the steel to be supplied in Houston, Texas FOB. The plaintiff had it hauled to Arkansas at its own expense. As far as the defendant was concerned, its performance was completed when it shipped the steel to Houston. Thus there was no contract to supply services or things in Arkansas. Herein lies the distinction between the in-

stant case and *Gardner Engineering Corporation v. Page Engineering Co.*, 484 F.2d 27 (8th Cir. 1973), wherein jurisdiction was affirmed on the basis that defendant had contracted to supply services or things in Arkansas. The defendant had specifically agreed to deliver specially manufactured bridge machinery to the job site in Arkansas and had also specifically agreed to provide personnel to supervise and assist in the installation and start-up of that machinery at the job site.

Even if the statutory language had been satisfied by defendant's activities, the latter did not constitute the "minimum contacts" with the State of Arkansas for the purpose of the Fourteenth Amendment. The latest expression of the Supreme Court of the United States occurs in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), a case arising under the Oklahoma Long Arm Statute. Oklahoma like Arkansas has the Uniform Act. Okla.Stat.Ann. §§ 12–1701.-01, et seq. The sections on the basis of jurisdiction are identical. In a products case the Supreme Court refused, on constitutional grounds, to permit Oklahoma to assert jurisdiction over a New York automobile dealer and distributor. "Thus, the Due Process Clause 'does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.' *International Shoe Co. v. Washington*, [326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945)] *supra.* Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *Id.* 100 S.Ct. at 565. The court quoted from *Hanson v. Denkla*, 357 U.S. 235, 250–51, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958) as follows:

As technological progress has increased the flow of commerce between the States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565, to the flexible standard of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. [Citation omitted.] Those restrictions are more than guarantees of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States.

In the latter case the court held "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253, 78 S.Ct. 1240.

A court may exercise personal jurisdiction over a nonresident defendant so long as there exist "minimum contacts" between the defendant and the forum state. *International Shoe v. Washington, supra.* The defendant's contacts with the forum state must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'" *Id.* 326 U.S. at 316, 66 S.Ct. at 158, quoting *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). While the limitations on the jurisdiction as imposed by the Due Process Clause have been substantially relaxed over the years in such cases as *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), there are bounds which may not be transgressed. "The historical developments noted in *McGee*, of course, have only accelerated in the generation since that case was decided. Neverthe-

less, we have never accepted the proposition that state lines are irrelevant for jurisdictional purposes, nor could we and remain faithful to the principles of interstate federalism embodied in the Constitution." *World-Wide Volkswagen Corp. v. Woodson, supra* 100 S.Ct. at 565.

The U. S. District Court cases for Arkansas cited by plaintiff are not persuasive. In *Arkansas-Best Freight System v. Youngblood*, 359 F.Supp. 1115 (W.D.Ark.1973) there were meetings of the parties in Arkansas and the first negotiations on the agreement occurred in Arkansas. "There is no doubt but that the contract as finally signed was merely a recap of the negotiations in Arkansas and Colorado." *Id.* at 1124. Judge Miller's language points up the distinctions between this case and *Youngblood* :

> The court is convinced that the activities *within Arkansas* of the defendants are embraced within the wording of the statute, and the demands of due process were met by the contacts and negotiations of the parties *in the State of Arkansas* so as to make it reasonable in the context of our federal system to defend the instant suit. (Emphasis added.)

In *Martin v. Kelley Electric Co.*, 371 F.Supp. 1225 (E.D.Ark.1974), Judge Henley held in a tort case that due process was not satisfied because the injured plaintiff's claim was unrelated to any activity of defendant in the State of Arkansas. The case was decided under a section of the Uniform Act not involved herein, i. e. Ark.Stat.Ann. § 27–2502(C)(2).

This Court recently had occasion to review the Eighth Circuit, U. S. District Court, and Arkansas Supreme Court decisions interpreting the Arkansas Uniform Long Arm Act in the context of the Fourteenth Amendment. *Dreyfus Company, Inc. v. Royster Co.*, 487 F.Supp. 531 (E.D. Ark.1980). While jurisdiction was sustained in that case, a comparison of its facts with the facts of the instant case demonstrates many more contacts with the State of Arkansas. The parties had carried on a course

of dealing in the preceding year. Both parties had executed a purchase agreement under which the commodity involved (beans) was to be delivered in Arkansas. The beans were grown in Arkansas and inspected and certified by the Arkansas State Plant Board. The cases relied on in *Dreyfus* contain a plentitude of contacts with Arkansas in comparison with those existing in the case at bar.

For the reasons stated above, the defendant's motion to dismiss is sustained and the complaint of the plaintiff is dismissed for lack of jurisdiction.

IT IS SO ORDERED.