Randy TIETLOFF, Appellant
(Plaintiff Below),

v.

LIFT–A–LOFT CORPORATION,
Appellee (Defendant Below),

Randell Corporation, Nominal Appellee
(Plaintiff Below).

No. 2–881A280.

Court of Appeals of Indiana,
Second District.

Nov. 23, 1982.

Loft), defendant below. The only issue presented is whether the trial court erred in determining that the Arkansas state court lacked personal jurisdiction over Lift-A-Loft.

The facts of record are simple and substantially without conflict. In 1975, Tietloff, an Arkansas resident, contacted Bob Duncan, then vice-president in charge of the equipment division of Lift-A-Loft, an Indiana corporation, in an effort to interest the corporation in manufacturing Tietloff's invention, a side-loader fork lift. Negotiations ensued. In the process, Duncan went to West Memphis, Arkansas to meet with Tietloff and his associates. They discussed arrangements for picking up the fork lift from North Little Rock, Arkansas. Before his departure, Duncan entered into an oral agreement with Tietloff which included the obligation to return the machine in good condition. The agreement was entered into either in West Memphis, Arkansas or across the river in Memphis, Tennessee. Duncan sent Paul J. Rummel, an assistant sales manager of Lift-A-Loft, to meet with Tietloff in Little Rock, Arkansas and to look at the fork lift there. After his return to Indiana, Duncan sent a letter to Tietloff confirming their arrangement and agreeing to send one of Lift-A-Loft's trucks to Little Rock to pick up the fork lift. Duncan did in fact send a Lift-A-Loft employee and a truck to Arkansas to transport the fork lift to Indiana for evaluation.

Tietloff came to Indiana to demonstrate the machine to the officers of Lift-A-Loft. Thereafter, the parties learned that Tietloff had not as yet obtained a patent on the machine. Lift-A-Loft kept the fork lift for approximately three years awaiting issuance of a patent. The corporation stored it outside. Some parts were allegedly removed from the fork lift for evaluation and never returned. Vandals allegedly removed other parts. Finally, in 1978, Lift-A-Loft returned the fork lift to Tietloff in Arkansas. Lift-A-Loft paid for the shipping.

Stan G. Wyrick, Muncie, for appellant.

J. David Haynes, Dennis, Raisor, Wenger & Haynes, P.C., Muncie, for appellee.

SULLIVAN, Judge.

Randy Tietloff, plaintiff below,[1] appeals an adverse judgment in his action to enforce an Arkansas default judgment against Lift-A-Loft Corporation (Lift-A-

1. Although Randell Corporation was listed as an additional party plaintiff in this action, it was not a party to the Arkansas litigation. The corporation ceased to exist sometime in 1970 or 1971. Randy Tietloff, as successor to the rights of Randell Corporation and owner of the side-loader fork lift, is the sole appellant.

Tietloff brought suit against Lift-A-Loft in an Arkansas state court, alleging inter alia that as a part of the oral agreement of the parties, Lift-A-Loft was obligated to return the fork lift in good condition and that Lift-A-Loft had breached this agreement by causing or permitting damage to occur to the side-loader fork lift while it was in the care and possession of Lift-A-Loft.[2] Service of summons was made upon Lift-A-Loft, but Lift-A-Loft failed to defend the action. A default judgment was entered against it in the amount of $4,381.37.

Tietloff then brought suit on the Arkansas judgment in Indiana. Lift-A-Loft defended on the ground, among others, that the Arkansas court lacked personal jurisdiction over it and that, therefore, the Arkansas judgment was invalid. The trial court granted Lift-A-Loft's motion for judgment on the pleadings,[3] finding that the Arkansas state court lacked jurisdiction over Lift-A-Loft because of insufficient contacts between it and the State of Arkansas.

Initially we note that Lift-A-Loft asserts lack of personal jurisdiction as a collateral attack on the validity of the Arkansas default judgment. See Restatement (Second) of Judgments § 81 (1982). Indiana law requires the defendant to bear the burden of proof on affirmative defenses, including lack of jurisdiction over his person. Ind. Rules of Procedure, Trial Rule 8(C). See also Weenig v. Wood (2d Dist.1976) 169 Ind.App. 413, 349 N.E.2d 235; Podgorny v. Great Central Insurance Co. (3d Dist.1974) 160 Ind.App. 244, 311 N.E.2d 640. Compare

R. Leflar, American Conflicts Law §§ 121, 124 (3d ed. 1977); Restatement (Second) of Conflicts of Law §§ 122, 133 (1971) (Matters of procedure, including placement of the burden of proof, are generally governed by the law of the forum in which relief is sought.) Therefore, Lift-A-Loft bore the burden to demonstrate by a preponderance of the evidence that it had insufficient contacts with Arkansas to support the Arkansas court's assertion of personal jurisdiction over it. We hold that Lift-A-Loft failed to meet that burden.

Generally, in analogous circumstances, the jurisdictional determination requires a two-step analysis. First, it must be determined whether the particular long-arm statute authorizes the exercise of jurisdiction over the defendant; and second, if the defendant's activities are embraced within the statute, it must be determined whether the state's exercise of in personam jurisdiction over the defendant offends the due process clause of the 14th Amendment. See Woods, *The Far Side of Jurisdiction,* 22 Ark.L.Rev. 627 (1969).

The relevant portion of the Arkansas long-arm statute, Ark.Stat.Ann. § 27–2502, provides:

"C. . . .

1. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's

(a) transacting any business in this State;

\* \* \* \* \* \*

---

2. In addition, Tietloff asserted a claim against Lift-A-Loft based on negligence in storing and caring for the fork lift. Had Tietloff's claim been based solely on tort, our result would be different. Contacts between Arkansas and the cause of action for negligence were insufficient. The alleged negligent acts occurred in Indiana. Our focus is solely upon the contractual claim.

3. In rendering its judgment, the trial court considered all exhibits and interrogatories submitted. When matters extraneous to the pleadings are presented and considered by the trial court in ruling on a motion for judgment on the pleadings, the motion is to be treated as one for summary judgment. Ind. Rules of Procedure,

Trial Rule 12(C). See also Anderson v. Anderson (2d Dist.1979) Ind.App., 399 N.E.2d 391. Thus, on review we must determine whether the record discloses any genuine issue of material fact and, if not, whether the moving party is entitled to a judgment as a matter of law. Perry v. Northern Ind. Pub. Serv. Co. (4th Dist. 1982) Ind.App., 433 N.E.2d 44; Wienke v. Lynch (2d Dist.1980) Ind.App., 407 N.E.2d 280. The facts material to the disposition of this case relate to the contacts of the defendant with the State of Arkansas. Those facts are not in dispute. See note 4, infra. Therefore, the sole issue is the validity of the trial court's legal conclusions.

2. When jurisdiction over a person is based solely upon this section, only a (cause of action) (claim for relief) arising from acts enumerated in this section may be asserted against him.

D. Service outside the State. When the exercise of personal jurisdiction is authorized by this section, service may be made outside this State."

■ A study of Arkansas precedent reveals that the purpose of the long-arm statute is to permit the exercise of jurisdiction over non-residents to the extent permitted by the due process clause. *See Pennsalt Chemical Corp. v. Crown Cork & Seal Co., Inc.* (1968) 244 Ark. 638, 426 S.W.2d 417; *Safeway Stores, Inc. v. Shwayder Bros., Inc.* (1964) 238 Ark. 768, 384 S.W.2d 473. *See also Thompson v. Ecological Science Corp.* (8th Cir.1970) 421 F.2d 467; *Martin v. Kelley Electric Co.* (E.D.Ark.1974) 371 F.Supp. 1225; *Arkansas-Best Freight System, Inc. v. Youngblood* (W.D.Ark.1973) 359 F.Supp. 1115. Accordingly, we need not perform the two-part analysis. Rather, we engage in a "single search for the outer limits of what due process permits." *Oddi v. Mariner-Denver, Inc.* (S.D.Ind.1978) 461 F.Supp. 306, 308.

■ To exercise jurisdiction consonant with due process over a non-resident defendant, "certain minimum contacts" must exist between the non-resident defendant and the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 *quoting Milliken v. Meyer* (1940) 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278. A mechanical or quantitative evaluation of a defendant's activities in a state cannot resolve the question of the reasonableness of the exercise of personal jurisdiction. Rather, it depends upon the quality and nature of the defendant's activity in relation to the matter under litigation. *Hutson v. Fehr Bros.* (8th Cir.1978) 584 F.2d 833 (construing Arkansas law). The facts of each case must be weighed. At a minimum, the court must find "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla* (1958) 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283. The inquiry focuses not only upon the quantity, quality and nature of the defendant's activities but also upon the relationship of those activities and the forum. *Rush v. Savchuk* (1980) 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516; *Kulko v. California Superior Court* (1978) 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132; *Shaffer v. Heitner* (1977) 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683. The focus is on the defendant's activities within the forum state, not on those of the plaintiff. *World Wide Volkswagen v. Woodson* (1980) 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490.

■ The factors to be considered in determining whether fair play and substantial justice standards have been met may be summarized as follows: (1) The nature and quality of the contacts with the forum state; (2) the quantity of contacts with the state; (3) the relationship between those contacts and the cause of action; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *See Aftanase v. Economy Baler Co.* (8th Cir.1965) 343 F.2d 187, 197. The first three are the primary factors in determining whether *International Shoe* standards are met. *Id.*

■ The facts here reveal at least two instances in which an agent of Lift-A-Loft entered the state of Arkansas to negotiate the underlying contract and to examine the fork lift. The contract itself was entered into either in Arkansas or Tennessee but, in any event, not in Indiana. There were also other contacts with Arkansas, including Duncan's sending a letter to Tietloff confirming the arrangement to pick up the fork lift. In addition, an employee of Lift-A-Loft hauled the fork lift from Arkansas to Indiana. Lift-A-Loft also paid for its return shipment to Arkansas.

In *Wichman v. Hughes* (1970) 248 Ark. 121, 450 S.W.2d 294, a non-resident defend-

ant sent an agent into Arkansas to buy horses from the plaintiff. Thereafter, the defendant sent a van into Arkansas to pick up the horses, giving the plaintiff a check for the purchase price. That check was dishonored, apparently because the defendant stopped payment on it. The court held that these contacts were sufficient to confer personal jurisdiction over the non-resident defendant under the "transacting any business in this State" portion of the statute. The court further noted:

> " '[T]he "transaction of any business" could have been held by an unsympathetic court to be a synonym for the earlier restrictive term "doing business." Again in the spirit of the statute's purpose to expand jurisdiction to the modern constitutional limit, however, the courts have consistently upheld jurisdiction ... over an isolated business transaction with the requisite connection to this State.' " *Id.* at 123, 450 S.W.2d at 296 (quoting Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois,* 1963 U. of Ill. Law Forum 533, 565).

In *Thompson v. Ecological Science Corp., supra,* 421 F.2d 467, the court held that a group of Arkansas and Tennessee citizens could maintain an action in Arkansas against a foreign corporation whose sole contact with Arkansas was its presence there for two days of negotiations leading up to the conclusion of a contract, even though the contract, when reduced to writing, was signed outside Arkansas. The court noted:

> "The defendant's activities in Arkansas were directed toward the consummation of the contract in question. An ordinarily insignificant contact with a state becomes constitutionally significant when it gives rise to the claim involved in the lawsuit....
>
> [T]he fact that the claim for relief relates directly to the activities which were transacted in Arkansas is relevant as an indicia of the qualitative contact made." *Id.* at 470.

The facts in *Roger N. Joyce & Associates v. Paoli Steel Corp.* (E.D.Ark.1980) 491 F.Supp. 1095, are distinguishable from those in the present case. In *Joyce,* the only person-to-person dealings between the parties occurred in Pennsylvania, the residence of the defendant. The defendant never entered Arkansas. The agreement between the plaintiff and the defendant provided that the defendant's steel was to be supplied in Texas F.O.B. The plaintiff paid for the expense of hauling the steel to Arkansas. Defendant's performance was completed when it shipped the steel to Houston. The court found that the defendant's activities did not rise to the status of transacting any business in Arkansas, nor did the exercise of personal jurisdiction over the defendant comport with due process.

Lift-A-Loft's activities in Arkansas related to the negotiation of the agreement which is the subject matter of this action. Whether the contract was entered into in Arkansas or Tennessee is merely one factor in determining minimum contacts. *See Thompson v. Ecological Science Corp., supra,* 421 F.2d at 469; *Dreyfus Co., Inc. v. Royster Co.* (E.D.Ark.1980) 487 F.Supp. 531. Similarly, where the contract is finally breached is not determinative of jurisdiction. Even though the alleged damage to the fork lift occurred outside Arkansas, there was a direct connection between the agreement negotiated in Arkansas and the breach of that agreement in Indiana. Part of the implied agreement between the parties included an obligation on the part of Lift-A-Loft to exercise ordinary care and diligence in the maintenance of the property and to be responsible for ordinary neglect of the property. *See Miller v. Dyer* (1968) 243 Ark. 981, 423 S.W.2d 275; *Bertig Bros. v. Norman* (1911) 101 Ark. 75, 141 S.W. 201. *See also* 8 Am.Jur.2d *Bailments* §§ 139, 213, 221. In addition, Tietloff alleged that Lift-A-Loft had expressly agreed to return the fork lift in good condition.[4]

---

4. Lift-A-Loft did not produce any evidence negating this allegation. The agent involved in the negotiation of the agreement died before this action was commenced. We recognize that

Although the quantity of the defendant's contacts with the forum are relatively few, courts have based personal jurisdiction on fewer contacts. *See Thompson v. Ecological Science Corp., supra,* 421 F.2d 467, *Dreyfus Co. v. Royster Co., supra,* 487 F.Supp. 531; *Commercial Bank & Trust Co. v. Dixie Sound & Communications, Inc.* (E.D.Ark. 1979) 468 F.Supp. 578. The pervasive contacts were the negotiations leading up to the oral agreement and the defendant's entrance into the State to pick up the fork lift and to return it. As stated in *Oddi v. Mariner-Denver, Inc., supra,* 461 F.Supp. at 309: "When a cause of action arises from the defendant's contacts with the forum, less is required to support jurisdiction than when the cause of action is unrelated to those contacts."

These observations lead to the conclusion that the three primary criteria summarized in *Aftanase, supra,* are met by the facts in this case. The facts also meet the requirement established in *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. at 1240 that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . ."

The secondary factors enumerated in *Aftanase, supra,* are also met. One of the parties to the oral contract involved here was an Arkansas citizen. The State of Arkansas has a special interest in any contract involving its citizens, particularly when meetings occurred in Arkansas and the subject matter of the dispute, the fork lift, was taken from and returned to Arkansas by the defendant. *See Thompson v. Ecological Science Corp., supra,* 421 F.2d at 470. In addition, Arkansas would appear to be as convenient a forum as any in which to litigate this dispute. Lift-A-Loft would have suffered little inconvenience in appearing in the tribunals of the state it had entered to examine and transport the subject matter of the dispute. True, the defendant would have been required to transport its witnesses to Arkansas, but, in this instance, the distance involved is not unduly burdensome. Any inconvenience is counterbalanced by the fact that Lift-A-Loft previously found reason to enter the forum in furtherance of this transaction.

We conclude that the exercise of personal jurisdiction by the Arkansas state court over Lift-A-Loft was not inconsistent with fair play and substantial justice. There were present more than the minimum contacts which the Supreme Court has prescribed. We hold that the trial court erred in determining that the Arkansas state court lacked jurisdiction over Lift-A-Loft. We reverse and remand for further proceedings consistent herewith.

BUCHANAN, C.J., and SHIELDS, J., concur.

---

Lift-A-Loft might have been hard-pressed to produce affidavits based on personal knowledge relating to the terms of the contract. Nevertheless, it was required to do so. The statements in the affidavit of Ralph Dennis, current chairman of the board of Lift-A-Loft, that "defendant has never transacted any business in the State of Arkansas, either directly or through an authorized agent" and that "the transaction referred to in plaintiff's complaint was entered into in the State of Indiana," Rec-

ord at 36, cannot be considered in determining whether the defendant had sufficient contacts with Arkansas. The first statement is a mere conclusion of law and the second is not based on personal knowledge. *See* Ind. Rules of Procedure, Trial Rule 56(E). *See also Podgorny v. Great Cent. Ins. Co.* (3d Dist.1974) 160 Ind.App. 244, 311 N.E.2d 640; *Renn v. Davidson's Southport Lumber Co., Inc.* (2d Dist.1973) 157 Ind.App. 446, 300 N.E.2d 682.