CASAD RAILWAY SERVICES, INC., Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY, Defendant.

Civ. No. F 86–328.

United States District Court, N.D. Indiana, Fort Wayne Division.

April 21, 1987.

**124**

David Peebles, Peebles, Rogers, Hamilton & Skekloff, Fort Wayne, Ind., for plaintiff.

Gayla L. Fletcher, Omaha, Neb., Harold Abrahamson, Abrahamson, Reed & Adley, Hammond, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

The defendant has filed various motions to dismiss. Both parties have briefed their respective positions and a telephone conference was held on March 5, 1987, to discuss the motions. For the following reasons, the complaint is dismissed without prejudice. The plaintiff is given thirty (30) days from the date of this order to file an amended complaint.

### I.

### *Factual Background*

The essential facts are undisputed. The plaintiff, Casad Railway Services, Inc. (Casad), is an Indiana corporation which repairs railroad tracks, rails, and accessories. The defendant, Union Pacific Railroad Company (Union Pacific), is a corporation with its principal place of business in Nebraska.

In 1984, Union Pacific received a brochure from Casad which contained information regarding Casad's ability to rebuild railroad frogs, devices which enable wheels to cross diverging tracks. Thereafter, negotiations took place between Casad's representative, located in Cincinnati, Ohio, and Union Pacific in Omaha, Nebraska. On August 10, 1984, Union Pacific issued a purchase order, requesting repairs to 10 of its frogs.

Union Pacific then sent its frogs to Casad's facility in New Haven, Indiana. During the course of repairs a Union Pacific employee visited the Indiana facility to inspect the frogs. Later, Union Pacific changed its order, cancelling the repairs to one frog, and requesting the shipment of the nine remaining frogs to Cheyenne, Wyoming. Union Pacific paid Casad $35,748 for repairs to the nine frogs.

On June 21, 1985, after payment, Union Pacific rejected the frogs due to allegedly incorrect repairs. Union Pacific later sent a report regarding the rejected material, requesting a refund or a credit covering the value of the rejected materials. After receiving the report, a Casad representative went to Wyoming and inspected the rejected frogs. Subsequently, Casad filed suit in this court, seeking declaratory judgment relief and an award for repair work which was allegedly outside the scope of repair work normally done.

Union Pacific has a sales representative who occupies an office in central Indiana and who solicits business for Union Pacific in Indiana. Other Union Pacific employees, who are not based in Indiana, also solicit business in Indiana. While Union Pacific owns no tracks and operates no trains in Indiana, it does generate revenue from Indiana.

### II.

### *Union Pacific's Motions to Dismiss*

Union Pacific has three arguments. First, while Union Pacific concedes that

there is diversity of citizenship which would appear to give this court subject matter jurisdiction under 28 U.S.C. § 1332, it argues that the court does not have personal jurisdiction, so that the complaint should be dismissed under Fed.R.Civ.P. 12(b)(2). Second, assuming the absence of diversity jurisdiction, Union Pacific argues that subject matter jurisdiction is improper under 28 U.S.C. § 1334 (1982), so that the complaint should be dismissed pursuant to Fed F.Civ.P. 12(b)(1). Lastly, assuming the court has jurisdiction, Union Pacific argues that the complaint fails to state a claim and should be dismissed pursuant to Fed.R. Civ.P. 12(b)(6).

## A.

### *Diversity Jurisdiction—Jurisdiction over the Person*

■ Casad alleges diversity jurisdiction under 28 U.S.C. § 1332 (1982). In diversity cases, this court has jurisdiction over non-resident defendants, such as Union Pacific, only if an Indiana court would have jurisdiction. *Scott Turnock v. Cope*, 816 F.2d 332, 334 (7th Cir.1987); *Lakeside Bridge & Steel v. Mountain State Construction Co., Inc.*, 597 F.2d 596 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). Indiana Rules of Procedure, Trial Rule 4.4, controls the issue of whether a federal court has personal jurisdiction over a non-resident defendant. The pertinent portion of Trial Rule 4.4 states:

(A) ... Any person or organization that is a nonresident of this state, ... submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state;

...

Trial Rule 4.4(A) is applicable to federal courts located in Indiana where the federal courts are sitting in diversity. This rule is intended to extend personal jurisdiction to the extent allowed by due process. *Nu-Way Systems v. Belmont Marketing*, 635 F.2d 617 (7th Cir.1980).

■ Due process requires that a trial court acquire personal jurisdiction over a non-resident defendant before it renders a judgment against that defendant. *Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). Before a court can exercise personal jurisdiction it must determine that "minimum contacts" exist between the foreign state and the non-resident defendant, which comport with due process. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Minimum contacts exist when maintenance of the suit in question "does not offend 'traditional notions of fair play and substantial justice.'" *Id.*, quoting *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). A district court must determine whether it is reasonable, due to the non-resident defendant's conduct in connection with the forum state, for the non-resident defendant to anticipate being haled into court in the forum state. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

The court must also determine whether the non-resident defendant purposely availed himself or itself of the privilege of conducting activities within the forum state. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The test for minimum contacts is flexible and necessarily dependent upon the facts of each case with particular attention being given to the nature and quality of the contacts. *Lakeside*, 597 F.2d at 596.

Union Pacific concedes that it does business in Indiana, so that jurisdiction is at least prima facially conferred by the long arm statute. *See e.g. Neiman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189, 1190 (7th Cir.1980). Union Pacific argues, however, that due process would be offended if this court exercised jurisdiction. Citing *Tietloff v. Lift-A-Loft Corp.*, 441 N.E.2d 986, 989 (Ind.App. 1982), Union Pacific argues that its contacts with Indiana are not sufficient to confer jurisdiction. In *Tietloff*, the court considered the following factors in determining whether exercising jurisdiction would offend due process: (1) the nature and quality of the contacts with the foreign

state; (2) the quantity of contacts with the state; (3) the relationship between those contacts and the cause of action; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Tietloff,* 441 N.E.2d at 989.

■ Having considered the factors in *Tietloff,* it is clear to the court that Union Pacific maintains sufficient contacts with Indiana so that the exercise of personal jurisdiction by this court does not offend due process. Union Pacific maintains an office in Indiana with an employee who solicits business in Indiana. While the cause of action in this case is not related to Union Pacific's regular solicitation of business in Indiana, its solicitation of business indicates a "substantial connection" between Union Pacific and Indiana. *See Burger King Corp. v. Rudzuwicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Union Pacific's solicitation of business in Indiana, and its decision to have Casad repair its frogs in Indiana, indicates an action by Union Pacific purposefully directed toward Indiana. *Asahi Metal Industry Co. v. Superior Court,* — U.S. —, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

Moreover, some of Union Pacific's contacts with Indiana are related to this cause of action. Union Pacific voluntarily shipped its frogs to Indiana. Thereafter, it inspected the frogs in Indiana, where the repairs were ultimately completed. With respect to the first three factors set forth in *Tietloff,* therefore, it is clear that due process would not be offended by this court's exercise of jurisdiction. Indiana has an interest in providing a forum for its residents, and it would be no less convenient for Casad to have to litigate this action outside the state than it is for Union Pacific to have to litigate this action within the state. Factors 4 and 5, therefore, also suggest that this court should exercise jurisdiction.

Having determined that diversity jurisdiction exists under 28 U.S.C. § 1332 (1982), and having determined that the exercise of jurisdiction over Union Pacific does not offend traditional notions of fair play and substantial justice, the court does not need to reach Union Pacific's second argument, the argument that jurisdiction does not exist under 28 U.S.C. § 1334 (1982). The court may, therefore, go on to determine whether Casad's complaint states a claim upon which relief can be granted.

### B.

#### *Failure to State a Claim*

■ Union Pacific argues that Casad has failed to state a claim under 28 U.S.C. §§ 2201, 2202 (1982), for declaratory judgment relief. As Union Pacific points out, the declaratory act was designed to "avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued." *Cunningham Bros., Inc. v. Bail,* 407 F.2d 1165, 1168 (7th Cir.1969). In *Cunningham,* the court reasoned that the plaintiff's claim did not fall within the purpose of the declaratory judgment act because the claim was not brought to avoid damages which would accrue if a certain course of conduct was taken in the future. *Id.* Because the plaintiff's claim did not fall within the purpose of the act, the court dismissed the plaintiff's complaint. In this case, Casad had no ongoing obligation to repair frogs for Union Pacific. Casad has been paid for the work which it has completed and no damages are accruing for which Casad may later be held liable. A declaration of the parties' rights will not prevent the accrual of avoidable damages and therefore, will not serve the purpose of the act. Casad's complaint does not, therefore, state a claim under the declaratory judgment act.

■ It is well established that a district court may refuse to grant declaratory relief for prudential reasons. *Alcan Aluminum v. Dept. of Revenue of State of Oregon,* 724 F.2d 1294, 1298 (7th Cir.1984). There are good reasons, besides those previously articulated, for declining declaratory relief in this case. While there is, to be sure, a controversy between the parties, it

is not sufficiently immediate to warrant declaratory judgment relief. *Cunningham,* 407 F.2d at 1169. Casad has been paid $35,748, and while Union Pacific has rejected the frogs, it has not filed suit to recover the money. Although Casad apparently seeks additional money it has not made a demand to Union Pacific. This creates a double contingency. *See* Wright, Miller & Kane *Federal Practice and Procedure:* Civil 2d § 2757 (1983). In what is essentially a simple contract case, Casad is seeking a declaration about the legal consequences of future conduct (the demand) which has not taken place. If that conduct does take place, Union Pacific may not even challenge it in a court of law. It would be premature for this court to grant declaratory relief.

There is another prudential reason for refusing to grant declaratory relief. This is essentially a contract dispute. Although "the existence of another adequate remedy does not preclude a judgment for declaratory relief ...," *see* Fed.R.Civ.P. 57, a plaintiff's suit for declaratory relief should not be allowed to go forward when the plaintiff's suit has the effect of forcing the other party to litigate a claim which he may not have wanted to litigate at a time which might precede a determination of the full extent of damages. *Cunningham,* 407 F.2d at 1169. Casad, by seeking declaratory relief, is attempting to preempt any contract claim which Union Pacific might make after the legal interests of the parties have become sufficiently immediate. This court will not grant declaratory relief for that purpose. If Casad has a valid contract claim, that claim ought to be presented.

### Conclusion

While personal jurisdiction over Union Pacific is proper in this case, Casad's complaint does not state a claim upon which declaratory relief may be granted. Casad's complaint is therefore DISMISSED. In line with the federal policy of deciding cases on their merits, however, *see* Wright, Miller & Kane *Federal Practice and Procedure:* Civil 2d § 1356 (1983), Casad will be given a chance to file an amended complaint within thirty (30) days from the date of this order.